**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| --------------------------------------------------------- | x | |
| **IN RE:** | : | |
| | : | |
| **MIRENA IUS LEVONORGESTREL-RELATED PRODUCTS LIABILITY LITIGATION (NO. II)** | : | **17-MD-2767 (PAE)**<br>**17-MC-2767 (PAE)** |
| | : | |
| ***This Document Relates to All Actions*** | : | |
| | : | |
| --------------------------------------------------------- | x | |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF DANA GOSSETT, M.D., M.S.C.I.**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .......... ii

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 1

I. Dr. Gossett's General Causation Opinion Is Admissible. .......... 1

A. Dr. Gossett Is Qualified to Opine on General Causation. .......... 1

B. Dr. Gossett's General Causation Opinion Is Reliable. .......... 4

II. Dr. Gossett's Non-General Causation Opinions Are Admissible. .......... 8

A. Dr. Gossett's Labeling Opinions Satisfy Rule 702. .......... 8

B. Dr. Gossett's Opinions on the Non-Contraceptive Benefits of Mirena Are Relevant, Reliable, and Will Not Create Juror Confusion. .......... 10

CONCLUSION .......... 11

## TABLE OF AUTHORITIES

### Cases

*Deutsch v. Novartis Pharm. Corp.*,
768 F. Supp. 2d 420 (E.D.N.Y. 2011) ........ 4, 9

*Huskey v. Ethicon, Inc.*,
29 F. Supp. 3d 691 (S.D.W. Va. 2014) ........ 7

*In re Baycol Prods. Liab. Litig.*,
532 F. Supp. 2d 1029 (D. Minn. 2007) ........ 10

*In re Diet Drugs Prods. Liab. Litig.*,
2000 WL 876900 (E.D. Pa. June 20, 2000) ........ 10

*In re Mirena IUD Prods. Liab. Litig.*,
169 F. Supp. 3d 396 (S.D.N.Y. 2016)
*aff'd*, 2017 WL 4785947 (2d Cir. Oct. 24, 2017) (summary order)
*cert. petition filed*, No. 17-1037 (Jan. 22, 2018) ........ passim

*In re Mirena IUD Prods. Liab. Litig.*,
202 F. Supp. 3d 304 (S.D.N.Y. 2016)
*aff'd*, 2017 WL 4785947 (2d Cir. Oct. 24, 2017) (summary order)
*cert. petition filed*, No. 17-1037 (Jan. 22, 2018) ........ 8

*In re Seroquel Prods. Liab. Litig.*,
2009 WL 3806436 (M.D. Fla. July 20, 2009) ........ 9

*In re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Prods. Liab. Litig.*,
2011 WL 6740363 (S.D. Ill. Dec. 22, 2011) ........ 3

*Lyman v. Pfizer, Inc.*,
2012 WL 2971550 (D. Vt. July 20, 2012) ........ 3

*Rowland v. Novartis Pharm. Corp.*,
9 F. Supp. 3d 553 (W.D. Pa. 2014) ........ 9

*Scott v. Chipotle Mexican Grill, Inc.*,
315 F.R.D. 33 (S.D.N.Y. 2016) ........ 4, 7

*Watkins v. Cook, Inc.*,
2015 WL 1395773 (S.D.W. Va. Mar. 25, 2015) ........ 9

*Wise v. C.R. Bard, Inc.*,
2015 WL 521202 (S.D.W. Va. Feb. 7, 2015) ........ 9

**Rules**

Federal Rules of Evidence Rule 403 ........................................................................................ 11

## PRELIMINARY STATEMENT

Plaintiffs seek to preclude Dana Gossett, M.D., M.S.C.I., a board-certified OB/GYN and an endowed professor at the University of California, San Francisco (UCSF) School of Medicine, from offering general causation and labeling opinions. Pl. Ex. A, Gossett Rpt. at 1. Dr. Gossett currently serves as the Chief of the Division of Obstetrics and Gynecology at USCF, where she oversees the clinical practices of 25 OB/GYNs and routinely counsels women on contraceptives. *Id*. at 1; Pl. Ex. C, Gossett Dep. 49:9-11, 49:18-50:12. In challenging her qualifications, Plaintiffs overlook her Master's Degree in the Science of Clinical Investigation, which means she not only has a clinical research degree but completed a post-graduate research training program and was a research fellow. Pl. Ex. A, Gossett Rpt. at 1. And the criticisms lodged against Dr. Gossett take aim at the conclusions she drew, not the methodology she employed in reaching them. Dr. Gossett is qualified, and she abided by a reliable methodology in reaching each of her opinions. Plaintiffs' sweeping motion raises no legitimate basis for exclusion and should be denied.

## ARGUMENT

### I. Dr. Gossett's General Causation Opinion Is Admissible.

#### A. Dr. Gossett Is Qualified to Opine on General Causation.

As a practicing clinician with extensive epidemiological education and training, Dr. Gossett is well-qualified to offer a general causation opinion in this litigation. Plaintiffs' motion essentially seeks to bar Dr. Gossett from even uttering the term IIH because she is "not an ophthalmologist, neuro-ophthalmologist, or neuro-scientist." Pl. Br. at 5. But this argument demonstrates a fundamental misunderstanding of Dr. Gossett's role in this litigation. She has not been designated to opine about the treatment or diagnosis of IIH, but about whether the scientific evidence establishes a relationship between Mirena and IIH, the clinical import of Plaintiffs'

experts' admittedly unproven and untested mechanism hypotheses, and whether that evidence is sufficient to alter prescribing decisions by a physician who actually prescribes Mirena. Pl. Ex. C, Gossett Dep. 39:7–22 ("And so many of the other reports were really hypothesizing about mechanistic ways in which Levonorgestrel could potentially be associated with IIH. Given that there really is no evidence of that association, all of that hypothesizing is somewhat premature."), 85:25–86:9. As Dr. Gossett explained at her deposition:

> The question -- one of the fundamental questions about this litigation, in my mind, is whether there is any information that changes the risk-benefit analysis for the use of Mirena, either in an individual woman or more broadly, and the people who are best equipped to opine on the use of a contraceptive device in that context are people who utilize it, so OB/GYN physicians by and large.

*Id.* at 38:6–17.

That Dr. Gossett has not personally diagnosed a patient with IIH and would refer a patient with suspected IIH symptoms to a specialist in no way discounts her qualifications. Pl. Br. at 6-7. She maintains an active clinical practice, treating about 50 patients per week and routinely counseling women on contraception on the order of 25–30 times per week. Pl. Ex. C, Gossett Dep. 50:13–51:4. Over the course of her career, she has placed over 700 IUDs and supervised hundreds more insertions. Pl. Ex. A, Gossett Rpt. at 1. More pointedly, she has treated at least three patients with IIH in the OB/GYN clinical context. Pl. Ex. C, Gossett Dep. 112:8–13. Given the importance to her clinical practice of evaluating the relationship between Mirena and IIH, the fact that she has not published on the potential risk does not render her unqualified to analyze the issues. Pl. Br. at 5–6.

Nor is Dr. Gossett required to bear the formal title of "epidemiologist" or have a Ph.D. in epidemiology to opine on the epidemiological data at issue and identify the fatal flaws in the data

Plaintiffs tout as evidence of causation. Pl. Br. at 12. Setting aside the fact that this incredibly high burden, if evenly applied, would bar the admissibility of nearly all of Plaintiffs' designated experts, Plaintiffs' brief altogether ignores Dr. Gossett's epidemiological training. She earned a clinical research degree, completed post-graduate research training, and was named a research fellow. Pl. Ex. A, Gossett Rpt. at 1; Pl. Ex. C, Gossett Dep. 109:3–13 ("I will opine as a clinician, as a user of these labels and these devices, and . . . I do have some training in epidemiological studies and biostatistics . . . ."). Furthermore, "as a practicing physician," she "read[s] medical literature on a regular basis . . . ." *Id.* at 30:17–31:11. In any event, courts have routinely held that "medical doctors do not need to be epidemiologists in order to testify regarding epidemiological studies." *In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 426 (S.D.N.Y. 2016), *aff'd*, 2017 WL 4785947 (2d Cir. Oct. 24, 2017) (summary order), *cert. petition filed*, No. 17-1037 (Jan. 22, 2018); *see also Lyman v. Pfizer, Inc.*, No. 2:09-cv-262, 2012 WL 2971550, at *3 (D. Vt. July 20, 2012) ("A medical doctor does not have to be an epidemiologist in order to testify about epidemiological studies."); *In re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Prods. Liab. Litig.*, No. 3:09-md-02100-DRH-PMF, 2011 WL 6740363, at *6 (S.D. Ill. Dec. 22, 2011) ("[S]imply because Dr. Devoy is not an epidemiologist does not mean he cannot testify to the epidemiological studies that he has reviewed. Dr. Devoy regularly reviews epidemiological studies in the course of his employment and this experience allows him to testify about the studies he has reviewed in this case." (citations omitted)). In short, Dr. Gossett falls well within the bounds of her expertise when she opines on the clinical import of the available literature and the effect of the available evidence on her contraceptive prescribing decisions.

**B. Dr. Gossett's General Causation Opinion Is Reliable.**

Dr. Gossett employed a reliable methodology to reach her general causation opinion, thoroughly addressing all epidemiological data relied upon by Plaintiffs' experts (and more) and gauging their reliability, using her clinical counseling experience, clinical research education, and medical training. This distinguishes her from Plaintiffs' experts, who consistently neglected contrary evidence and ignored the authors' conclusions in the studies that they cited as support for their opinions. Rather than "disregard[] a wealth of evidence," Pl. Br. at 4, Dr. Gossett systematically explained why the data do not support a causal association between Mirena and IIH – employing a reliable, measured methodology. *See In re Mirena*, 169 F. Supp. 3d at 418–19 ("[G]iven that Defendants' experts are attempting to prove a negative . . . pointing to the absence of convincing studies or the weaknesses of studies on which Plaintiffs rely, and evaluating them in light of their clinical experience, training and research, is in these circumstances a logical and valid approach."); *Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 44 (S.D.N.Y. 2016) ("When offering expert testimony, the defendant has no burden to produce models or methods of their own; they need only attack those of the plaintiffs' experts." (internal quotation marks omitted)); *Deutsch v. Novartis Pharm. Corp.*, 768 F. Supp. 2d 420, 480 (E.D.N.Y. 2011) (admitting expert testimony where the witnesses "primarily based their [] opinions on their review of the relevant medical literature and their own personal experiences as prescribing physicians").

Unlike Plaintiffs' designated experts, Dr. Gossett's opinion is supported by an expansive review of the pertinent peer-reviewed literature. *See* Pl. Ex. A, Gossett Rpt. at 15–21. Plaintiffs cannot rationally dispute that Dr. Gossett closely examined the only two published studies on Mirena and IIH. *See id.* at 16-21. In fact, Plaintiffs themselves concede that Dr. Gossett assessed the flaws pervading Dr. Etminan's 2015 disproportionality analysis. Pl. Br. at 14; Pl.

Ex. A, Gossett Rpt. at 16–18; Pl. Ex. C, Gossett Dep. 144:15–147:15, 149:8–153:3. But Plaintiffs then misconstrue Dr. Gossett's consideration of the study. First, Plaintiffs incorrectly imply that Defendants have the burden of disproving a causal relationship. Second, Plaintiffs argue that Dr. Gossett's opinion that Mirena does not cause IIH is based on the Dr. Etminan's corrected analysis published in 2017. Pl. Br. at 14–15. The burden-shifting theme, which recurs throughout Plaintiffs' *Daubert* briefs, demonstrates a fundamental misunderstanding of the law; Plaintiffs alone have the burden to come forward with reliable causation evidence, and Defendants are not required to come forward with affirmative evidence disproving Plaintiffs' theory. *See* Def. Opp. to Pl. Omnibus Br. at 1–4. Dr. Gossett reliably weighed the Etminan analysis, both as originally published and corrected, as one of the only two articles addressing the topic, in reaching her conclusion. Pl. Ex. C, Gossett Dep. 162:2–17.

With respect to the Valenzuela publication, Plaintiffs proclaim in their motion that Dr. Gossett "disregard[ed]" and "tosse[d] aside" the study when she spent over three pages of her report detailing the methodological shortcomings that undermine the reliability the study, and her opinion aligns with the conclusions drawn by the Valenzuela authors. Pl. Br. at 12; Pl. Ex. C, Gossett Dep. 165:18–169:14. *See* Pl. Ex. A, Gossett Rpt. at 18–21; Ex. 64, Valenzuela 2017 at 4 ("Our investigation does *not* indicate that an LNG-IUS can cause PTC, and the number of women with an LNG-IUS was too small to determine if an LNG-IUS is an *independent* risk factor for PTC." (emphases in original)). Plaintiffs' position cannot be squared with their own experts' acknowledgment of the study's flaws; indeed, Dr. Wheeler even went so far as to confess that this study does not even support an *association* – much less causation – between Mirena and IIH. Ex 14, Wheeler Dep. 190:7–16. Plaintiffs provide no support for their argument that Dr. Gossett should have ignored the article's flaws. Pl. Br. at 11–12. The fact that

Valenzuela was peer-reviewed and published does not categorically immunize it from methodological criticism. *See In re Mirena*, 169 F. Supp. 3d at 419 (rejecting plaintiffs' argument that a defense expert "ignored contradictory scientific literature" where she "specifically addressed the leading [peer-reviewed] study on which [p]laintiffs rely" and "found it to suffer 'from multiple methodological and analytical flaws that render its conclusions inaccurate'" (internal citation omitted)).

Although sufficient, Dr. Gossett's analysis did not end with the two published articles on Mirena and IIH. She went on to examine whether evidence of an association exists between *any* hormonal contraception and IIH. Dr. Gossett did not show "complete disregard" for the Norplant/Jadelle warning labels, as Plaintiffs posit. Pl. Br. at 15. She explicitly considered both product warning labels in her report, explained why they are distinguishable from Mirena, and noted that she is "not aware of any LNG-containing contraceptive currently marketed in this country that has an IIH warning." Pl. Ex. A, Gossett Rpt. at 27. She further explained why the inherent limitations in the Norplant case reports precluded them from being reliable causation evidence for *Norplant* – let alone Mirena. *Id.* at 16. Dr. Gossett also considered data on COCs, which release higher systemic levels of LNG than Mirena, and found no evidence of even an association between COCs and IIH (a fact which Plaintiffs' experts do not dispute). *Id*. at 15; Def. Omnibus Br. at 22–23.

Lacking a legitimate challenge to Dr. Gossett's general causation methodology, Plaintiffs resort to tangential accusations that would hardly be worthy of cross-examination, let alone provide grounds for exclusion under *Daubert*. For instance, they argue that Dr. Gossett did not

consider Bayer's internal adverse event data in reaching her conclusions.[1] Pl. Br. at 12–14. But there is no such requirement under the *Daubert* framework: internal manufacturer documents are not the type of documents on which clinicians rely and a decision not to review these documents does not render a clinician's testimony unreliable. *See* Pl. Ex. C, Gossett Dep. 180:7–23 ("as those would not be things I would normally review in the course of my -- my own work, I did not spend time reviewing these internal documents."); *In re Mirena*, 169 F. Supp. 3d at 426–27 (rejecting argument that defense experts should be excluded for not reviewing allegedly conflicting internal company documents because "[t]he statements and public positions of Bayer are not scientific literature that an expert would be expected to confront in the exercise of intellectual rigor in the field"); *Huskey v. Ethicon, Inc.*, 29 F. Supp. 3d 691, 735 (S.D.W. Va. 2014) ("The plaintiffs also contend that [the expert's] opinion is unreliable because he did not review internal [company] documents that refute his conclusion ... [the expert's] failure to review particular documents goes to the weight of his opinion, not its admissibility."). Moreover, the FDA has cautioned that AERs simply "cannot establish a causal relationship between an exposure and a disease." Pl. Ex. A, Gossett Rpt. at 16; Ex. A, Questions and Answers on FAERS at 2 ("FAERS data cannot be used to calculate the incidence of an adverse event or medication error in the U.S. population.") (attached hereto). This attack on Dr. Gossett's methodology is all the more puzzling since Plaintiffs' own experts confirmed that adverse event data cannot be used to prove causation. *See* Def. Omnibus Br. at 19. AERs are inherently

[1] Plaintiffs criticize Dr. Gossett for not considering Defendants' Empirica data, but Plaintiffs' assertion that Dr. Gossett was required to review this data is meritless. Pl. Br. at 13. None of Plaintiffs' experts relied on, or were even provided with, data from the Empirica database, so Dr. Gossett, as a rebuttal expert, had no reason to review these data. *See Scott*, 315 F.R.D. at 44 ("When offering expert testimony, the defendant has no burden to produce models or methods of their own; they need only attack those of the plaintiffs' experts." (internal quotation marks omitted)).

unreliable and are not the sort of data on which clinicians rely, and thus provide no basis to exclude Dr. Gossett's testimony. *See, e.g.*, *In re Mirena IUD Prods. Liab. Litig.*, 202 F. Supp. 3d 304, 325 (S.D.N.Y. 2016), *aff'd,* 2017 WL 4785947 (2d Cir. Oct. 24, 2017) (summary order), *cert. petition filed,* No. 17-1037 (Jan. 22, 2018) ("Case reports are not reliable evidence of causation.").[2]

At bottom, Plaintiffs raise no viable challenge to the reliability of Dr. Gossett's methodology, and their dissatisfaction with Dr. Gossett's conclusions is not a basis for exclusion. *See In re Mirena*, 169 F. Supp. 3d at 425 ("[I]f Plaintiffs disagree with Dr. Javitt's conclusions, they can take it up on cross-examination. Their criticisms do not undermine her reliability, but rather go to the weight that should be given to her testimony.").

## II. Dr. Gossett's Non-General Causation Opinions Are Admissible.

Although not part of the general causation calculus relevant at this stage of the proceedings, Plaintiffs challenge two of Dr. Gossett's opinions relating to Mirena. While the court need not confront these issues at this stage, Dr. Gossett's opinions on these topics are not subject to reasonable challenge.

### A. Dr. Gossett's Labeling Opinions Satisfy Rule 702.

Dr. Gossett possesses the requisite qualifications to opine on the adequacy of Mirena's warning label because she "ha[s] experience in inserting IUDs, including Mirena, and ha[s] familiarity with its label, how it is understood, and how it is discussed with patients. . . ." *In re Mirena*, 169 F. Supp. 3d at 423. Plaintiffs' efforts to portray Dr. Gossett's labeling opinions as

[2] The same holds true for Plaintiffs' assertion that Dr. Gossett's opinion should be excluded because she "skimmed" certain Plaintiffs' experts' reports and refused to engage in Plaintiffs' counsel's memory test of naming the Plaintiffs' expert and his or her corresponding opinions. Pl. Br. at 8. Neither of these points speaks to the reliability of Dr. Gossett's opinions. Pl. Ex. C, Gossett Dep. 39:7-22 ("When making a judgment about whether a particular complication or outcome is associated with a drug or device, I rely on the medical literature.").

regulatory in nature are misguided, since Dr. Gossett expressly disclaimed any intention of wading into regulatory territory. *See* Pl. Br. at 18-19; Pl. Br. Ex C, Gossett Dep. 107:6–15, 108:1–109:13. Dr. Gossett, as a prescribing physician, is the *precise* audience to whom the label is directed and by whom the label must be clinically interpreted. *See Rowland v. Novartis Pharm. Corp.*, 9 F. Supp. 3d 553, 569 (W.D. Pa. 2014) ("the warnings that accompany prescription drugs are directed ***to the physician***, who then uses h[er] independent medical judgment, data supplied by the manufacturer, medical literature, and other sources to decide whether to prescribe the drug to a particular patient." (emphasis added)); Pl. Ex. C, Gossett Dep. 107:6–14 ("I do consider myself the intended end user of FDA drug labeling and, therefore, have some familiarity with drug labels as they're used in clinical practice."). Dr. Gossett reliably backs her opinions with her clinical experience as a frequent prescriber of contraception backed by her training in epidemiology. *Id.* at 109:3–13. Indeed, courts have consistently held that prescribing physicians' opinions on the clinical adequacy of prescription labeling satisfy Rule 702. *See, e.g.*, *Watkins v. Cook, Inc.*, No. 2:13-CV-20370, 2015 WL 1395773, at *10 (S.D.W. Va. Mar. 25, 2015) (finding physician qualified to opine on the adequacy of labeling so long as his opinion is "based on his knowledge of and clinical experience with the risks of SIS products [] and not on FDA requirements or regulations"); *Wise v. C.R. Bard, Inc.*, No. 2:12-CV-01378, 2015 WL 521202, at *5 (S.D.W. Va. Feb. 7, 2015) (deeming physician qualified to evaluate "warnings based on his knowledge of and clinical experience with the risks of pelvic mesh products"); *Deutsch*, 768 F. Supp. 2d at 440 (permitting experts to "opine as to the adequacy of the labels from the perspective of oncologists and prescribing physicians"); *In re Seroquel Prods. Liab. Litig.*, No. 6:06-MD-1769-Orl-22DAB, 2009 WL 3806436, at *8 (M.D. Fla. July 20, 2009) (allowing medical doctor experts to "express opinions regarding the accuracy and adequacy of

the Seroquel label"); *In re Baycol Prods. Liab. Litig.*, 532 F. Supp. 2d 1029, 1064 (D. Minn. 2007) ("Dr. Boult is qualified to render an opinion regarding the completeness or accuracy of the Baycol label based on his knowledge of the risks of Baycol and his own clinical experience."); *In re Diet Drugs Prods. Liab. Litig.*, No. MDL-1203, 2000 WL 876900, at *11 (E.D. Pa. June 20, 2000). Plaintiffs have failed to muster a single case concluding otherwise.

**B. Dr. Gossett's Opinions on the Non-Contraceptive Benefits of Mirena Are Relevant, Reliable, and Will Not Create Juror Confusion.**

Plaintiffs move to exclude Dr. Gossett's opinions about various benefits of Mirena other than preventing unplanned pregnancy. Pl. Br. at 16–18. As she explained at her deposition, her role is not limited to the issue of causation; she also intends to opine on Mirena's use, safety, and risk-benefit profile. Pl. Ex. C, Gossett Dep. 85:25–86:16. These opinions are relevant and will assist the jury because Dr. Gossett's explanation of the non-contraceptive benefits of Mirena will illuminate why Mirena is preferentially prescribed to overweight and obese reproductive-age women (the population at increased risk for IIH) – a fact which Plaintiffs' OB/GYN expert Dr. Wheeler does not dispute. *Id.* at 89:14–90: 16; Ex. 14, Wheeler Dep. 90:16–18 ("hormonal IUDs are preferentially prescribed to obese women"); Pl. Ex. A, Rpt. at 9–10. Plaintiffs' claim that Dr. Gossett's opinions on the non-contraceptive benefits of Mirena are "unsupported by a reliable methodology" is purely a lawyer-sponsored argument.[3] Pl. Br. at 17. Plaintiffs' own expert Dr. Darney agrees with Dr. Gossett's assessment of the non-contraceptive benefits of Mirena; indeed, he has previously published that Mirena's non-contraceptive benefits include "[r]eduction of heavy menstrual bleeding," "[t]reatment of primary dysmenorrhea," "[t]reatment

[3] Dr. Gossett's opinion, which is that Mirena can reduce the risk of endometrial hyperplasia and endometrial cancer in high-risk women and can be used to treat known endometrial hyperplasia (for which it is approved outside the United States), is supported by published literature on her reliance list. *See, e.g.*, Ex. B, Dottino 2016 at 751 (attached hereto); Ex. C, Fraser 2013 at 275 (attached hereto).

of endometriosis," "[p]rotection against endometrial hyperplasia," and "[r]eduction of endometrial cancer risk." *Compare* Ex. 62, Speroff & Darney 2011 at 247–49 *with* Pl. Ex. A, Gossett Rpt. at 6–9. Plaintiffs' Rule 403 challenge is not only premature, but they have not come close to meeting their burden to show that the "probative value" of these opinions "is substantially outweighed by a danger of . . . misleading the jury." *See* Fed. R. Evid. 403.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny in its entirety Plaintiffs' motion to exclude the testimony of Dr. Dana Gossett.

DATED: March 15, 2018

Respectfully submitted,

*/s/ Shayna S. Cook*
Shayna S. Cook
Goldman Ismail Tomaselli Brennan & Baum LLP
564 W. Randolph St., Suite 400
Chicago, IL 60661
Telephone: (312) 881-5947
Facsimile: (312) 881-5247
scook@goldmanismail.com

Paul W. Schmidt
Michael X. Imbroscio
Covington & Burling LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001
Telephone: (202) 662-5272
Facsimile: (202) 778-5272
pschmidt@cov.com
mimbroscio@cov.com

E. James Shepherd
Shook, Hardy & Bacon LLP
600 Travis Street, Suite 3400
Houston, TX 77072
Telephone: (713) 546-5610
Facsimile: (713) 227-8008

eshepherd@shb.com

*Attorneys for Defendants Bayer HealthCare Pharmaceuticals Inc., Bayer Pharma AG, and Bayer Oy*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of March, 2018, a copy of the foregoing has been served on the interested parties in this action via electronic mail to:

Martin D. Crump
Davis & Crump PC
2601 Fourteenth Street
Gulfport, Mississippi 39501
martincrump@daviscrump.com
*Co-Lead Counsel for Plaintiffs*

Lawrence L. Jones II
Jones Ward PLC
The Pointe
1205 East Washington Street, Suite 111
Louisville, Kentucky 40206
larry@jonesward.com
*Co-Lead Counsel for Plaintiffs*

Maxwell S. Kennerly
Kennerly Loutey, LLC
PO Box 30049
Elkins Park, Pennsylvania 19027
msk@thlawyer.com
*Liaison Counsel for Plaintiffs*

*/s/ Shayna S. Cook*
Shayna S. Cook