# EXHIBIT D

## Dec. 4, 2017 Defendants' Objections & Responses to Plaintiffs' Second Set Requests for Admissions

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE: | : | |
| | : | 17-MD-2767 (PAE) |
| MIRENA IUS LEVONORGESTREL-RELATED PRODUCTS LIABILITY LITIGATION (NO. II) | : | 17-MC-2767 (PAE) |
| | : | |
| *This Document Relates To All Actions* | : | |

**DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFFS' SECOND SET REQUESTS FOR ADMISSIONS TO DEFENDANTS BAYER HEALTHCARE PHARMACEUTICALS INC., BAYER OY AND BAYER PHARMA AG**

Pursuant to the Court's rulings regarding discovery to be conducted in this litigation and Federal Rules of Civil Procedure 26 and 36, Defendants Bayer HealthCare Pharmaceuticals Inc., Bayer Oy, and Bayer Pharma AG (collectively referred to as "Bayer") submit the following responses and objections to Plaintiff's Second Set of Requests for Admission.

**REQUESTS FOR ADMISSIONS**

**REQUEST FOR ADMISSION NO. 1:** Admit that levonorgestrel is the sole active ingredient contained in Mirena.

**RESPONSE:**

Bayer admits that levonorgestrel is the sole active pharmaceutical ingredient in Mirena.

**REQUEST FOR ADMISSION NO. 2:** Admit that levonorgestrel is a synthetic progestin derived from 19-nor testosterone.

**RESPONSE:**

Admit.

**REQUEST FOR ADMISSION NO. 3:** Admit that levonorgestrel released from Mirena enters the bloodstream and circulates, including to the brain.

**RESPONSE:**

Subject to the objections and clarifications below, Bayer admits that some levonorgestrel released from Mirena enters the bloodstream.

**Objection as to specific terms:**

Bayer objects to this Request because the phrase "including the brain" is vague and ambiguous. Bayer cannot determine from the context of this Request whether the Request is referring to levonorgestrel entering the brain tissue (in which case levonorgestrel would need to cross the blood-brain barrier) or whether the Request is implying that some of the levonorgestrel in the blood circulates in the blood vessels in the brain (in which case levonorgestrel would not need to cross the blood brain barrier).

**Objection to an Improper Request for Admission:**

Bayer further objects to this Request as overly broad, unduly burdensome, unclear, vague, ambiguous and improper under FED. R. CIV. P. 36. *See Moosman v. Joseph P. Blitz, Inc.*, 358 F.2d 686, 688 (2d. Cir. 1966) ("[T]he purpose of Rule 36 is to expedite trial by removing uncontested issues."); *United Coal Cos. v. Powell Constr. Co*., 839 F.2d 958, 968 (3d Cir. 1988) (stating that requests for admission should state the fact in such a way that it can be denied or admitted "with an absolute minimum of explanation or qualification."). Bayer cannot speculate about this hypothetical in the absence of additional clarifying information that is necessary to make this a Request that Bayer can admit or deny. This overly broad, unduly burdensome, unclear, vague, ambiguous and improper Request makes an admission or denial impossible. *See Diederich v. Department of Army*, 132 F.R.D. 614, 619 (S.D.N.Y. 1990) ("Specificity and detail is, thus,

necessary and appropriate in each individual request, so that the extent of each admission or denial can be ascertained without excessive qualification."); *Herrera v. Scully*, 143 F.R.D. 545, 549 (S.D.N.Y. 1992) (stating that requests for admission should be direct, simple, and restricted to separate relevant facts.).

**REQUEST FOR ADMISSION NO. 4:** Admit that blood concentrations of levonorgestrel can vary among individual users of Mirena by a factor greater than three, so that some Mirena users will have more than three times the concentration of levonorgestrel than other users.

**RESPONSE:**

Subject to the objections and clarifications below, Bayer admits only that metabolic clearance rates and a variety of other factors, including weight and baseline SHBG levels, differ among individuals, and this may account in part for individual variations in LNG concentrations seen in individuals using LNG-containing products.

**Objection to an Improper Request for Admission:**

Bayer objects to this Request as overly broad, unduly burdensome, unclear, vague, ambiguous and improper under FED. R. CIV. P. 36. *See Moosman*, 358 F.2d at 688 ("[T]he purpose of Rule 36 is to expedite trial by removing uncontested issues."); *United Coal Cos.*, 839 F.2d at 968 (stating that requests for admission should state the fact in such a way that it can be denied or admitted "with an absolute minimum of explanation or qualification."). Bayer cannot speculate about blood concentrations of levonorgestrel in hypothetical patients with no knowledge of any patient characteristics (for example age, weight) or exposure to levonorgestrel (such as insertion dates because serum levels of levonorgestrel decline over time). This overly broad, unduly burdensome, unclear, vague, ambiguous and improper Request makes an admission or denial

impossible. *See Diederich*, 132 F.R.D. at 619 ("Specificity and detail is, thus, necessary and appropriate in each individual request, so that the extent of each admission or denial can be ascertained without excessive qualification."); *Herrera,* 143 F.R.D. at 549 (stating that requests for admission should be direct, simple, and restricted to separate relevant facts.).

**REQUEST FOR ADMISSION NO. 5:** Admit that blood concentrations of levonorgestrel can vary at different points in time within an individual user of Mirena by a factor greater than two, so that, during a 5-year period of continuous Mirena use, an individual could have at one point in time more than double the concentration of levonorgestrel they have at another time.

**RESPONSE:**

Subject to the objections and clarifications below, Bayer admits that Mirena produces a stable levonorgestrel serum concentration that decreases over time during the life of the product.

**Objection to an Improper Request for Admission:**

Bayer objects to this Request as overly broad, unduly burdensome, unclear, vague, ambiguous and improper under FED. R. CIV. P. 36. *See Moosman,* 358 F.2d at 688 ("[T]he purpose of Rule 36 is to expedite trial by removing uncontested issues."); *United Coal Cos.,* 839 F.2d at 968 (stating that requests for admission should state the fact in such a way that it can be denied or admitted "with an absolute minimum of explanation or qualification."). Bayer cannot speculate about blood concentrations of levonorgestrel in a hypothetical patient with no knowledge of any patient characteristics. This overly broad, unduly burdensome, unclear, vague, ambiguous and improper Request makes an admission or denial impossible. *See Diederich,* 132 F.R.D. at 619 ("Specificity and detail is, thus, necessary and appropriate in each individual request, so that the extent of each admission or denial can be ascertained without excessive qualification."); *Herrera,*

143 F.R.D. at 549 (stating that requests for admission should be direct, simple, and restricted to separate relevant facts.).

**REQUEST FOR ADMISSION NO. 6:** Admit that most of the levonorgestrel released from Mirena becomes bound to sex hormone binding globulin ("SHBG").

**RESPONSE:**

Bayer admits that levonorgestrel released from Mirena is approximately 98-99% protein bound to SHBG and also to albumin, once it enters the systemic circulation.

**REQUEST FOR ADMISSION NO. 7:** Admit that levonorgestrel released from Mirena decreases SHBG levels in Mirena users.

**RESPONSE:**

Bayer denies this Request as phrased. Bayer admits that studies of Mirena demonstrate that women using Mirena alone will have an initial slight decrease (approximately 20-30%) in their SHBG concentrations, but those SHBG concentrations will plateau and slightly increase thereafter.

**REQUEST FOR ADMISSION NO. 8:** Admit that the biological activity of levonorgestrel released from Mirena is affected by SHBG levels.

**RESPONSE:**

Subject to the objections below, Bayer cannot admit or deny this Request due the vague, ambiguous and undefined nature of this Request.

**Objection as to specific terms:**

Bayer objects to this Request because the phrases "biological activity" and "are affected by SHBG levels" are vague, ambiguous and undefined.

**Objection to an Improper Request for Admission:**

Bayer further objects to this Request as overly broad, unduly burdensome, unclear, vague, ambiguous and improper under FED. R. CIV. P. 36. *See Moosman*, 358 F.2d at 688 ("[T]he purpose of Rule 36 is to expedite trial by removing uncontested issues."); *United Coal Cos.*, 839 F.2d at 968 (stating that requests for admission should state the fact in such a way that it can be denied or admitted "with an absolute minimum of explanation or qualification."). Bayer cannot speculate about "biological activity of levonorgestrel" in a hypothetical patient with no knowledge of any patient characteristics (for example age, weight, whether the patient gained or lost weight or had any other medically significant conditions) or exposure to levonorgestrel (such as insertion dates because serum levels of levonorgestrel decline over time and SHBG levels increase over time). This overly broad, unduly burdensome, unclear, vague, ambiguous and improper Request makes an admission or denial impossible. *See Diederich*, 132 F.R.D. at 619 ("Specificity and detail is, thus, necessary and appropriate in each individual request, so that the extent of each admission or denial can be ascertained without excessive qualification."); *Herrera*, 143 F.R.D. at 549 (stating that requests for admission should be direct, simple, and restricted to separate relevant facts.).

**REQUEST FOR ADMISSION NO. 9:** Admit that administering ethinyl estradiol alongside levonorgestrel will alter the biological activity of levonorgestrel, the blood concentrations of levonorgestrel, and the effect of levonorgestrel on SHBG levels.

**RESPONSE:**

Subject to the objections below, Bayer denies this Request.

**Objection as to specific terms:**

Bayer objects to this Request because the phrases "administering ethinyl estradiol alongside"; "biological activity" and "the effect of levonorgestrel on SHBG levels" are vague,

ambiguous and undefined. Bayer further objects to this Request because the phrase "blood concentrations of levonorgestrel" is vague and ambiguous because it is unclear if the Request is referencing total LNG levels or free LNG levels.

**Objection based on the scope of the products at issue:**

Bayer further objects to this Request to the extent the Request seeks information about other combination products and is not limited to Mirena. The Court has already ruled as to the scope of permissible discovery as it relates to other products. *See* 7/27/17 CMC Trans. at 56:19-57:15 (denying Plaintiffs' request for discovery of products not at issue in this case as disproportionate and highly burdensome) and 10/24/17 CMC Trans. at 25:18-24 and 76:21-77:9. This Request for Admission, as phrased, seeks information not limited to Mirena and thus violates this Court's ruling and the general requirements that discovery be limited to relevant information and be proportional to the needs of the case. *See* FED. R. CIV. P. 26(b); *see also In re Abilify Prods. Liab. Litig.*, 2017 U.S. Dist. LEXIS 161660, at *25-26 (denying Plaintiffs' request for discovery regarding other drugs in the same class because "information regarding other drugs is irrelevant and not proportional to the needs of the case.").

**Objection to an Improper Request for Admission:**

Bayer further objects to this Request as overly broad, unduly burdensome, unclear, vague, ambiguous and improper under FED. R. CIV. P. 36. *See Moosman*, 358 F.2d at 688 ("[T]he purpose of Rule 36 is to expedite trial by removing uncontested issues."); *United Coal Cos.*, 839 F.2d at 968 (stating that requests for admission should state the fact in such a way that it can be denied or admitted "with an absolute minimum of explanation or qualification."). Bayer cannot speculate about "biological activity of levonorgestrel" in a hypothetical combination product with ethinyl estradiol with no knowledge of the concentration, dosage, or administration of either ethinyl

estradiol or levonorgestrel in this hypothetical product. This overly broad, unduly burdensome, unclear, vague, ambiguous and improper Request makes an admission or denial impossible. *See Diederich,* 132 F.R.D. at 619 ("Specificity and detail is, thus, necessary and appropriate in each individual request, so that the extent of each admission or denial can be ascertained without excessive qualification."); *Herrera,* 143 F.R.D. at 549 (stating that requests for admission should be direct, simple, and restricted to separate relevant facts.).

**REQUEST FOR ADMISSION NO. 10:** Admit that the proposed formulation and/or composition for the levonorgestrel-releasing intrauterine system ("LNG-IUS") was changed four times before Mirena was approved by FDA, with formulations known as Formulation A, Formulation B, Formulation C, and Formulation D, with Formulation D being the formulation marketed in the United States.

**RESPONSE:**

Subject to the objection and clarification below, Bayer admits that there were four formulations for Mirena known as Formulations A, B, C, and D and that Formulation D is the formulation marketed in the United States. Bayer denies the remainder of this Request.

**Objection as to specific terms:**

Bayer objects to the term "proposed" and the phrase "changed four times" as vague, ambiguous, and argumentative, and therefore, denies the remainder of this Request.

**REQUEST FOR ADMISSION NO. 11:** Admit that, prior to FDA approval, there was no research on the toxicity of "Composition D" on human tissue.

**RESPONSE:**

Denied.

**<u>REQUEST FOR ADMISSION NO. 12:</u>** Admit that metabolic clearance rates of levonorgestrel may differ by several-fold in users of Mirena.

**<u>RESPONSE:</u>**

Admit.

**<u>REQUEST FOR ADMISSION NO. 13:</u>** Admit that the levonorgestrel released from Mirena has systemic hormonal effects outside the uterine cavity.

**<u>RESPONSE:</u>**

Subject to the objection and clarification below, Bayer states that Mirena has mainly local progestogenic effects in the uterine cavity but admits that some Mirena users have reported certain systemic effects outside of the uterine cavity during Mirena use. Further answering, Bayer states that anovulation has also been observed in some Mirena users.

**<u>Objection as to vagueness of definition of systemic hormonal effects of Mirena:</u>**

Bayer objects to Plaintiffs use of the phrase "systemic hormonal effects" of Mirena in this Request as used by Plaintiffs as vague, ambiguous and undefined. Bayer should not be required to guess what alleged systemic hormonal effects Plaintiffs are referring to in this Request. Such a vague Request is improper. *See Herrera*, 143 F.R.D. at 549 (stating that requests for admission should be direct, simple, and restricted to separate relevant facts).

**<u>REQUEST FOR ADMISSION NO. 14:</u>** Admit that the levonorgestrel released from Mirena is sufficient to inhibit ovulation in some users.

**<u>RESPONSE:</u>**

Bayer admits that the levonorgestrel released from Mirena may inhibit ovulation in some women, primarily during the first year of use.

**REQUEST FOR ADMISSION NO. 15:** Admit that "hormonal side effects" is a reported reason for discontinuation of Mirena in clinical studies.

**RESPONSE:**

Bayer objects to this Request for the reason set forth below.

**Objection as to vagueness of definition of hormonal effects of Mirena:**

Bayer objects to Plaintiffs use of the phrase "hormonal effects" of Mirena in this Request as used by Plaintiffs as vague, ambiguous and undefined. Bayer should not be required to guess what alleged hormonal effects Plaintiffs are referring to in this Request. Such a vague Request is improper. *See Herrera*, 143 F.R.D. at 549 (stating that requests for admission should be direct, simple, and restricted to separate relevant facts).

**REQUEST FOR ADMISSION NO. 16:** Admit that "hormonal side effects" is a reported reason for discontinuation of Mirena in postmarketing experience.

**RESPONSE:**

Bayer objects to this Request for the reason set forth below.

**Objection as to vagueness of definition of hormonal effects of Mirena:**

Bayer objects to Plaintiffs use of the phrase "hormonal effects" of Mirena in this Request as used by Plaintiffs as vague, ambiguous and undefined. Bayer should not be required to guess what alleged hormonal effects Plaintiffs are referring to in this Request. Such a vague Request is improper. *See Herrera*, 143 F.R.D. at 549 (stating that requests for admission should be direct, simple, and restricted to separate relevant facts).

**REQUEST FOR ADMISSION NO. 17:** Admit that levonorgestrel released from Mirena® can cause acne in Mirena users.

**RESPONSE:**

Bayer objects to this Request for the reason set forth below.

**Objection to discovery for other conditions not involved in this litigation:**

Bayer objects to this Request as overly broad, unduly burdensome, and because it is outside the scope of FED. R. CIV. P. 26(b)(1) because causation discovery related to levonorgestrel and acne is (1) not relevant to any party's claim or defense and is not proportional to the needs of this litigation and (2) this Request violates the Court's previous orders on the scope of discovery in this litigation. *See* FED. R. CIV. P. 36(a)(1) (stating a party may serve . . . a request to admit . . . the truth of any matters within the scope of Rule 26(b)(1)); *see also* July 27, 2017 CMC Trans. at 54 (limiting discovery to the injuries alleged in this litigation [PTC/IIH] and variants of those terms.).

**REQUEST FOR ADMISSION NO. 18:** Admit that levonorgestrel released from Mirena can cause ovarian cysts in Mirena users.

**RESPONSE:**

Bayer objects to this Request for the reason set forth below.

**Objection to discovery for other conditions not involved in this litigation:**

Bayer objects to this Request as overly broad, unduly burdensome, and because it is outside the scope of FED. R. CIV. P. 26(b)(1) because causation discovery related to levonorgestrel and ovarian cysts is (1) not relevant to any party's claim or defense and is not proportional to the needs of this litigation and (2) this Request violates the Court's previous orders on the scope of discovery in this litigation. *See* FED. R. CIV. P. 36(a)(1) (stating a party may serve . . . a request to admit . . . the truth of any matters within the scope of Rule 26(b)(1)); *see also* July 27, 2017 CMC Trans. at 54 (limiting discovery to the injuries alleged in this litigation [PTC/IIH] and variants of those terms.).

**REQUEST FOR ADMISSION NO. 19:** Admit that levonorgestrel released from Mirena can cause exceptionally severe headaches and/or migraines in Mirena users.

**RESPONSE:**

Subject to the objections and clarification below, Bayer admits that headaches, including migraines, have been reported in Mirena users and are listed as adverse drug reactions in the product labeling for Mirena based on reports in clinical trials. Bayer denies the rest of this Request. Bayer specifically denies that Mirena causes headaches related to increased intracranial pressure.

**Objection to as to specific terms:**

Bayer objects to this Request because the term "exceptionally severe headache" as used by Plaintiffs in this Request is vague, ambiguous and undefined.

**Objection to discovery for other conditions not involved in this litigation:**

Bayer further objects to this Request as overly broad, unduly burdensome, and because it is outside the scope of FED. R. CIV. P. 26(b)(1) because causation discovery related to levonorgestrel and "exceptionally severe headaches and or migraines" is (1) not relevant to any party's claim or defense and is not proportional to the needs of this litigation and (2) this Request violates the Court's previous orders on the scope of discovery in this litigation. *See* FED. R. CIV. P. 36(a)(1) (stating a party may serve . . . a request to admit . . . the truth of any matters within the scope of Rule 26(b)(1)); *see also* July 27, 2017 CMC Trans. at 54 (limiting discovery to the injuries alleged in this litigation [PTC/IIH] and variants of those terms.).

**REQUEST FOR ADMISSION NO. 20:** Admit that levonorgestrel released from Mirena can cause increase of blood pressure in Mirena users.

**RESPONSE:**

Bayer objects to this Request for the reason set forth below.

**Objection to discovery for other conditions not involved in this litigation:**

Bayer objects to this Request as overly broad, unduly burdensome, and because it is outside the scope of FED. R. CIV. P. 26(b)(1) because causation discovery related to levonorgestrel and alleged increased blood pressure is (1) not relevant to any party's claim or defense and is not proportional to the needs of this litigation and (2) this Request violates the Court's previous orders on the scope of discovery in this litigation. *See* FED. R. CIV. P. 36(a)(1) (stating a party may serve . . . a request to admit . . . the truth of any matters within the scope of Rule 26(b)(1)); *see also* July 27, 2017 CMC Trans. at 54 (limiting discovery to the injuries alleged in this litigation [PTC/IIH] and variants of those terms.).

**REQUEST FOR ADMISSION NO. 21:** Admit that levonorgestrel released from Mirena can cause hirsutism in Mirena users.

**RESPONSE:**

Bayer objects to this Request for the reason set forth below.

**Objection to discovery for other conditions not involved in this litigation:**

Bayer objects to this Request as overly broad, unduly burdensome, and because it is outside the scope of Fed. R. Civ. P. 26(b)(1) because causation discovery related to levonorgestrel and hirsutism is (1) not relevant to any party's claim or defense and is not proportional to the needs of this litigation and (2) this Request violates the Court's previous orders on the scope of discovery in this litigation. *See* FED. R. CIV. P. 36(a)(1) (stating a party may serve . . . a request to admit . . . the truth of any matters within the scope of Rule 26(b)(1)); *see also* July 27, 2017 CMC Trans. at

54 (limiting discovery to the injuries alleged in this litigation [PTC/IIH] and variants of those terms.).

**REQUEST FOR ADMISSION NO. 22:** Admit that levonorgestrel released from Mirena can cause weight gain in Mirena users.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSION NO. 23:** Admit that levonorgestrel released from Mirena can cause edema in Mirena users.

**RESPONSE:**

Bayer objects to this Request for the reason set forth below.

**Objection to discovery for other conditions not involved in this litigation:**

Bayer objects to this Request as overly broad, unduly burdensome, and because it is outside the scope of FED. R. CIV. P. 26(b)(1) because causation discovery related to levonorgestrel and alleged edema is (1) not relevant to any party's claim or defense and is not proportional to the needs of this litigation and (2) this Request violates the Court's previous orders on the scope of discovery in this litigation. *See* FED. R. CIV. P. 36(a)(1) (stating a party may serve . . . a request to admit . . . the truth of any matters within the scope of Rule 26(b)(1)); *see also* July 27, 2017 CMC Trans. at 54 (limiting discovery to the injuries alleged in this litigation [PTC/IIH] and variants of those terms.).

**REQUEST FOR ADMISSION NO. 24:** Admit that the April 7, 2000 Mirena Investigator's Brochure listed intracranial hypertension as one of the known "spontaneously reported individual serious AEs/ADRs in association with LNG IUS."

**RESPONSE:**

Bayer admits that the April 7, 2000 Mirena Investigator's Brochure identifies one case of a spontaneously reported AE for intracranial hypertension but denies that the April 7, 2000 Mirena Investigator's Brochure is quoted in its entirety, accurately, fairly or completely.

**REQUEST FOR ADMISSION NO. 25:** Admit that the April 7, 2000 Mirena Investigator's Brochure listed each of the following as one of the known "spontaneously reported individual serious AEs/ADRs in association with LNG IUS": blind or blindness, brain edema, headache, migraine, edema, hypertension, abnormal vision, tinnitus, eye pain, and increased weight.

**RESPONSE:**

Subject to the objection and clarifications below, Bayer admits that the April 7, 2000 Mirena Investigator Brochure identifies the following spontaneously reported individual serious AEs in association with LNG IUS: blind (1 report); brain edema (1 report); headache (11 reports); migraine (5 reports); edema (1 report); hypertension (5 reports); vision abnormal (4 reports); tinnitus (2 reports); and increased weight (1 report) but denies any reports of "eye pain" and denies that the April 7, 2000 Mirena Investigator's Brochure is quoted in its entirety, accurately, fairly or completely.

**Objection to discovery for other conditions not involved in this litigation:**

Bayer objects to this Request as overly broad, unduly burdensome, and because it is outside the scope of FED. R. CIV. P. 26(b)(1) because causation discovery related to levonorgestrel and alleged blindness, brain edema, headache, migraine, edema, hypertension, abnormal vision, tinnitus, eye pain, and increased weight is (1) not relevant to any party's claim or defense and is not proportional to the needs of this litigation and (2) this Request violates the Court's previous orders on the scope of discovery in this litigation. *See* FED. R. CIV. P. 36(a)(1) (stating a party may

serve . . . a request to admit . . . the truth of any matters within the scope of Rule 26(b)(1)); *see also* July 27, 2017 CMC Trans. at 54 (limiting discovery to the injuries alleged in this litigation [PTC/IIH] and variants of those terms.).

**REQUEST FOR ADMISSION NO. 26:** Admit that the clinical trials conducted on Mirena to date do not have sufficient statistical power to disprove a causal association between Mirena use and PTC/IH.

**RESPONSE:**

Bayer objects to this Request for the reason set forth below.

**Objection to Improper, Misleading and Argumentative Request:**

Bayer objects to this Request as improper, misleading and argumentative because a clinical trial cannot disprove a causal association between any two things and because it is not feasible to conduct a prospective study that has sufficient statistical power to study PTC/IIH as an endpoint.

**REQUEST FOR ADMISSION NO. 27:** Admit that, since at least December 31, 2014, the EB05 for PTC/IH among Mirena users has been greater than 2.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSION NO. 28:** Admit that spontaneous reports of papilledema and/or optic nerve edema have been reported in postmarketing experience with Mirena.

**RESPONSE:**

Admit.

**REQUEST FOR ADMISSION NO. 29:** Admit that you are aware of individual case safety reports in which a Mirena user: had PTC/IH; the PTC/IH occurred with a

reasonable time relationship to their use of Mirena; the PTC/IH improved after the Mirena was removed; and there was no disease or other drug to which causation was likely attributed.

**RESPONSE:**

Subject to the objections and clarifications below, Bayer admits that isolated case reports of IIH or potential IIH have been received from Mirena users, but denies that there is a reasonable body of scientific data to support the theory of a causal association between Mirena and IIH. Bayer further denies that there are any non-ambiguous cases of positive dechallenge that can be identified in its database.

**Objections as to specific terms:**

Bayer objects to this Request and specifically the phrase "reasonable time relationship" as vague, ambiguous, and undefined.

**Objection to an Improper Request for Admission:**

Bayer further objects to this Request as overly broad, unduly burdensome, unclear, vague, ambiguous and improper under FED. R. CIV. P. 36. *See Moosman,* 358 F.2d at 688 ("[T]he purpose of Rule 36 is to expedite trial by removing uncontested issues."); *United Coal Cos.,* 839 F.2d at 968 (stating that requests for admission should state the fact in such a way that it can be denied or admitted "with an absolute minimum of explanation or qualification."). Requests for admission are not a discovery device and requests should be simple and direct, not vague or ambiguous. *See Wiwa v. Royal Dutch Petroleum Co.,* No. 96 Civ. 8386, 2009 U.S. Dist. LEXIS 45621 at *15-16 (S.D.N.Y. 2009). This Request cannot be admitted or denied unless the entirety of each unidentified individual case safety reports are properly analyzed. *See Diederich,* 132 F.R.D. at 619 ("Specificity and detail is, thus, necessary and appropriate in each individual request, so that the extent of each admission or denial can be ascertained without excessive qualification.");

*Herrera*, 143 F.R.D. at 549 (stating that requests for admission should be direct, simple, and restricted to separate relevant facts.).

**Objection as to definition of disease state:**

Bayer further objects to this Request for Admission because Plaintiffs' definition of PTC/IIH is vague and ambiguous. Plaintiffs define "PTC/IIH" as "the condition known by many names, *including but not limited to*: pseudotumor cerebri, pseudotumor cerebri syndrome, benign intracranial hypertension, intracranial hypertension, idiopathic intracranial hypertension, and increased intracranial hypertension." *See* Plaintiffs' Second Set of Requests for Admissions to Defendants Bayer HealthCare Pharm. Inc., Bayer Oy and Bayer AG at p. 2 (emphasis added). PTC/IIH is the clinical syndrome of raised intracranial pressure, in the absence of space-occupying lesions or vascular lesions, without enlargement of the cerebral ventricles, for which no causative factor can be identified. Plaintiffs' request for Bayer to admit a term regarding a condition known by many [undefined] names, including but not limited to only certain named conditions, is vague, ambiguous, and fails to describe the information sought with reasonable particularity. *See T. Rowe Price Small-Cap Fund, Inc.*, 174 F.R.D. 38, 46 (S.D.N.Y. 1997) (holding that requests for admission should be "simple and concise and state facts singly, so that they can easily and coherently be admitted or denied.").

**REQUEST FOR ADMISSION NO. 30:** Admit that there was no "ongoing monitoring" of adverse event reports of PTC/IH in Mirena users prior to 2009.

**RESPONSE:**

Subject to the objections and qualifications below, Bayer denies this Request.

**Objections as to specific terms:**

Bayer objects to this Request because the phrase "ongoing monitoring" as used by Plaintiffs in this Request is vague, ambiguous, and undefined. Both before and after 2009, Bayer was "monitoring" alleged IIH in Mirena users. Bayer has always performed post-marketing surveillance for injuries allegedly associated with its products, including Mirena. Further, in 2008, Bayer conducted a PTC/IIH signal analysis in response to an inquiry from the MHRA (the U.K. Health Authority). In Bayer's 2008 Signal Evaluation, Bayer evaluated literature reports, clinical trial data, and Bayer's adverse event reports. The reported rate of PTC/IIH in Mirena users was 0.07 cases per 100,000 woman years, which was at least an order of magnitude below the expected rate in women of reproductive age.

**Objection as to definition of disease state:**

Bayer further objects to this Request for Admission because Plaintiffs' definition of PTC/IIH is vague and ambiguous. Plaintiffs define "PTC/IIH" as "the condition known by many names, *including but not limited to*: pseudotumor cerebri, pseudotumor cerebri syndrome, benign intracranial hypertension, intracranial hypertension, idiopathic intracranial hypertension, and increased intracranial hypertension." *See* Plaintiffs' Second Set of Requests for Admissions to Defendants Bayer HealthCare Pharm. Inc., Bayer Oy and Bayer AG at p. 2 (emphasis added). PTC/IIH is the clinical syndrome of raised intracranial pressure, in the absence of space-occupying lesions or vascular lesions, without enlargement of the cerebral ventricles, for which no causative factor can be identified. Plaintiffs' request for Bayer to admit a term regarding a condition known by many [undefined] names, including but not limited to only certain named conditions, is vague, ambiguous, and fails to describe the information sought with reasonable particularity. *See T. Rowe Price Small-Cap Fund, Inc.*, 174 F.R.D. 38, 46 (S.D.N.Y. 1997) (holding that requests for

admission should be "simple and concise and state facts singly, so that they can easily and coherently be admitted or denied.").

**REQUEST FOR ADMISSION NO. 31:** Admit that you are not aware of any plausible biological mechanism by which obesity can cause PTC/IH.

**RESPONSE:**

Bayer states that although increased weight, obesity and recent weight gain are known risk factors for the development of PTC/IIH, Bayer admits that there is no generally accepted scientific biological mechanism by which obesity specifically causes PTC/IIH.

**REQUEST FOR ADMISSION NO. 32:** Admit that you are aware of adverse event reports of PTC/IH with reported "dechallenge" or outcome reported as "resolved."

**RESPONSE:**

Subject to the objections and clarifications below, Bayer admits that it has received spontaneous reports of IIH where the Mirena has been reportedly removed ("dechallenge"). Bayer also admits that it has received spontaneous reports of IIH with the outcome reported as "resolved." Bayer denies that there are any non-ambiguous cases of positive dechallenge that can be identified in its database.

**Objection to an Improper Request for Admission:**

Bayer objects to this Request as overly broad, unduly burdensome, unclear, vague, ambiguous and improper under FED. R. CIV. P. 36. *See Moosman,* 358 F.2d at 688 ("[T]he purpose of Rule 36 is to expedite trial by removing uncontested issues."); *United Coal Cos.*, 839 F.2d at 968 (stating that requests for admission should state the fact in such a way that it can be denied or admitted "with an absolute minimum of explanation or qualification."). Requests for admission are not a discovery device and requests should be simple and direct, not vague or ambiguous. *See*

*Wiwa v. Royal Dutch Petroleum Co.*, No. 96 Civ. 8386, 2009 U.S. Dist. LEXIS 45621 at *15-16 (S.D.N.Y. 2009). This Request cannot be admitted or denied unless the entirety of each unidentified individual case safety reports are properly analyzed. *See Diederich*, 132 F.R.D. at 619 ("Specificity and detail is, thus, necessary and appropriate in each individual request, so that the extent of each admission or denial can be ascertained without excessive qualification."); *Herrera*, 143 F.R.D. at 549 (stating that requests for admission should be direct, simple, and restricted to separate relevant facts.). Bayer's 2017 Signal Assessment to BfArM specifically addresses issues related to removal, outcome, treatment, dechallenge, and rechallenge and specifically concludes that no unambiguous case of positive dechallenge could be identified.

**Objection based on the scope of the products at issue:**

Bayer further objects to this Request to the extent the Request is not limited to Mirena. The Court has already ruled as to the scope of permissible discovery as it relates to non-Mirena levonorgestrel-containing or levonorgestrel-releasing products. *See* 7/27/17 CMC Trans. at 56:19-57:15 (denying Plaintiffs' request for discovery of products not at issue in this case as disproportionate and highly burdensome) and 10/24/17 CMC Trans. at 25:18-24 and 76:21-77:9. This Request for Admission, as phrased, seeks information not limited to Mirena and thus violates this Court's ruling and the general requirements that discovery be limited to relevant information and be proportional to the needs of the case. *See* FED. R. CIV. P. 26(b); *see also In re Abilify Prods. Liab. Litig.*, 2017 U.S. Dist. LEXIS 161660, at *25-26 (N.D. Fla. Sep. 29, 2017) (denying Plaintiffs' request for discovery regarding other drugs in the same class because "information regarding other drugs is irrelevant and not proportional to the needs of the case.").

**Objection as to definition of disease state:**

Bayer further objects to this Request for Admission because Plaintiffs' definition of PTC/IH is vague and ambiguous. Plaintiffs define "PTC/IH" as "the condition known by many names, *including but not limited to*: pseudotumor cerebri, pseudotumor cerebri syndrome, benign intracranial hypertension, intracranial hypertension, idiopathic intracranial hypertension, and increased intracranial hypertension." *See* Plaintiffs' Second Set of Requests for Admissions to Defendants Bayer HealthCare Pharm. Inc., Bayer Oy and Bayer AG at p. 2 (emphasis added). PTC/IIH is the clinical syndrome of raised intracranial pressure, in the absence of space-occupying lesions or vascular lesions, without enlargement of the cerebral ventricles, for which no causative factor can be identified. Plaintiffs' request for Bayer to admit a term regarding a condition known by many [undefined] names, including but not limited to only certain named conditions, is vague, ambiguous, and fails to describe the information sought with reasonable particularity. *See T. Rowe Price Small-Cap Fund, Inc*., 174 F.R.D. 38, 46 (S.D.N.Y. 1997) (holding that requests for admission should be "simple and concise and state facts singly, so that they can easily and coherently be admitted or denied.").

**REQUEST FOR ADMISSION NO. 33:** Admit that you are aware of adverse event reports of PTC/IH in women using Mirena who are not between the ages of 20-44.

**RESPONSE:**

Subject to the objection and clarification below, admit.

**Objection as to definition of disease state:**

Bayer objects to this Request for Admission because Plaintiffs' definition of PTC/IH is vague and ambiguous. Plaintiffs define "PTC/IH" as "the condition known by many names, *including but not limited to*: pseudotumor cerebri, pseudotumor cerebri syndrome, benign intracranial hypertension, intracranial hypertension, idiopathic intracranial hypertension, and

increased intracranial hypertension." *See* Plaintiffs' Second Set of Requests for Admissions to Defendants Bayer HealthCare Pharm. Inc., Bayer Oy and Bayer AG at p. 2 (emphasis added). PTC/IIH is the clinical syndrome of raised intracranial pressure, in the absence of space-occupying lesions or vascular lesions, without enlargement of the cerebral ventricles, for which no causative factor can be identified. Plaintiffs' request for Bayer to admit a term regarding a condition known by many [undefined] names, including but not limited to only certain named conditions, is vague, ambiguous, and fails to describe the information sought with reasonable particularity. *See T. Rowe Price Small-Cap Fund, Inc.*, 174 F.R.D. 38, 46 (S.D.N.Y. 1997) (holding that requests for admission should be "simple and concise and state facts singly, so that they can easily and coherently be admitted or denied.").

**REQUEST FOR ADMISSION NO. 34:** Admit that you cannot reliably quantify the extent, if such exists, to which being overweight increases the risk of a woman developing PTC/IH.

**RESPONSE:**

Subject to the objection and clarification below, denied.

**Objection as to definition of disease state:**

Bayer objects to this Request for Admission because Plaintiffs' definition of PTC/IH is vague and ambiguous. Plaintiffs define "PTC/IH" as "the condition known by many names, *including but not limited to*: pseudotumor cerebri, pseudotumor cerebri syndrome, benign intracranial hypertension, intracranial hypertension, idiopathic intracranial hypertension, and increased intracranial hypertension." *See* Plaintiffs' Second Set of Requests for Admissions to Defendants Bayer HealthCare Pharm. Inc., Bayer Oy and Bayer AG at p. 2 (emphasis added). PTC/IIH is the clinical syndrome of raised intracranial pressure, in the absence of space-occupying

lesions or vascular lesions, without enlargement of the cerebral ventricles, for which no causative factor can be identified. Plaintiffs' request for Bayer to admit a term regarding a condition known by many [undefined] names, including but not limited to only certain named conditions, is vague, ambiguous, and fails to describe the information sought with reasonable particularity. *See T. Rowe Price Small-Cap Fund, Inc*., 174 F.R.D. 38, 46 (S.D.N.Y. 1997) (holding that requests for admission should be "simple and concise and state facts singly, so that they can easily and coherently be admitted or denied.").

**REQUEST FOR ADMISSION NO. 35:** Admit that until at least 2006, your standard answer to physician inquiries regarding PTC/IH instructed that "the possible removal of Mirena must be considered by the treating health care professional, who has the best knowledge of the situation."

**RESPONSE:**

Bayer objects to this Request as misleading, argumentative and ambiguous and specifically denies that its position is quoted in its entirety, accurately, fairly or completely. Accordingly, Bayer denies this Request.

**Objection as to definition of disease state:**

Bayer further objects to this Request for Admission because Plaintiffs' definition of PTC/IH is vague and ambiguous. Plaintiffs define "PTC/IH" as "the condition known by many names, *including but not limited to*: pseudotumor cerebri, pseudotumor cerebri syndrome, benign intracranial hypertension, intracranial hypertension, idiopathic intracranial hypertension, and increased intracranial hypertension." *See* Plaintiffs' Second Set of Requests for Admissions to Defendants Bayer HealthCare Pharm. Inc., Bayer Oy and Bayer AG at p. 2 (emphasis added). PTC/IIH is the clinical syndrome of raised intracranial pressure, in the absence of space-occupying

lesions or vascular lesions, without enlargement of the cerebral ventricles, for which no causative factor can be identified. Plaintiffs' request for Bayer to admit a term regarding a condition known by many [undefined] names, including but not limited to only certain named conditions, is vague, ambiguous, and fails to describe the information sought with reasonable particularity. *See T. Rowe Price Small-Cap Fund, Inc*., 174 F.R.D. 38, 46 (S.D.N.Y. 1997) (holding that requests for admission should be "simple and concise and state facts singly, so that they can easily and coherently be admitted or denied.").

**REQUEST FOR ADMISSION NO. 36:** Admit that there are no controlled clinical trial studies that have been performed to determine whether there is a causal association between levonorgestrel and PTC/IH.

**RESPONSE:**

Subject to the objections and clarifications below, Bayer admits that it has not designed a study protocol with the primary endpoint to measure whether there is a causal association between Mirena and PTC/IH, but denies the remainder of this Request.

**Objection to Improper, Misleading and Argumentative Request:**

Bayer objects to this Request as improper, misleading and argumentative because a clinical trial cannot disprove a causal association between any two things and because it is not feasible to conduct a prospective study that has sufficient statistical power to study PTC/IIH as an endpoint.

**Objection based on the scope of the products at issue:**

Bayer further objects to this Request to the extent the Request is not limited to Mirena. The Court has already ruled as to the scope of permissible discovery as it relates to non-Mirena levonorgestrel-containing or levonorgestrel-releasing products. *See* 7/27/17 CMC Trans. at 56:19-57:15 (denying Plaintiffs' request for discovery of products not at issue in this case as

disproportionate and highly burdensome) and 10/24/17 CMC Trans. at 25:18-24 and 76:21-77:9. This Request for Admission, as phrased, seeks information not limited to Mirena and thus violates this Court's ruling and the general requirements that discovery be limited to relevant information and be proportional to the needs of the case. *See* FED. R. CIV. P. 26(b); *see also In re Abilify Prods. Liab. Litig.*, 2017 U.S. Dist. LEXIS 161660, at *25-26 (N.D. Fla. Sep. 29, 2017) (denying Plaintiffs' request for discovery regarding other drugs in the same class because "information regarding other drugs is irrelevant and not proportional to the needs of the case.").

**Objection as to definition of disease state:**

Bayer further objects to this Request for Admission because Plaintiffs' definition of PTC/IH is vague and ambiguous. Plaintiffs define "PTC/IH" as "the condition known by many names, *including but not limited to*: pseudotumor cerebri, pseudotumor cerebri syndrome, benign intracranial hypertension, intracranial hypertension, idiopathic intracranial hypertension, and increased intracranial hypertension." *See* Plaintiffs' Second Set of Requests for Admissions to Defendants Bayer HealthCare Pharm. Inc., Bayer Oy and Bayer AG at p. 2 (emphasis added). PTC/IIH is the clinical syndrome of raised intracranial pressure, in the absence of space-occupying lesions or vascular lesions, without enlargement of the cerebral ventricles, for which no causative factor can be identified. Plaintiffs' request for Bayer to admit a term regarding a condition known by many [undefined] names, including but not limited to only certain named conditions, is vague, ambiguous, and fails to describe the information sought with reasonable particularity. *See T. Rowe Price Small-Cap Fund, Inc.*, 174 F.R.D. 38, 46 (S.D.N.Y. 1997) (holding that requests for admission should be "simple and concise and state facts singly, so that they can easily and coherently be admitted or denied.").

**REQUEST FOR ADMISSION NO. 37:** Admit that you have not performed any studies to determine whether it is biologically plausible that levonorgestrel can cause or contribute to causing PTC/IH.

**RESPONSE:**

Subject to the objections and clarifications below, Bayer admits that it has not designed a study protocol with the specific endpoint to measure whether it is biologically plausible that Mirena can cause or contribute to causing PTC/IIH but denies the remainder of the Request.

**Objections as to specific terms and to improper Request:**

Bayer objects to this Request for Admission because the phrases "performed any studies" and "to determine whether it is biologically plausible" in this Request are vague, ambiguous and undefined. Bayer further objects to this Request as improper and argumentative because it suggests that such an undefined study could determine causation as opposed to just association.

**Objection based on the scope of the products at issue:**

Bayer further objects to this Request to the extent the Request is not limited to Mirena. The Court has already ruled as to the scope of permissible discovery as it relates to non-Mirena levonorgestrel-containing or levonorgestrel-releasing products. *See* 7/27/17 CMC Trans. at 56:19-57:15 (denying Plaintiffs' request for discovery of products not at issue in this case as disproportionate and highly burdensome) and 10/24/17 CMC Trans. at 25:18-24 and 76:21-77:9. This Request for Admission, as phrased, seeks information not limited to Mirena and thus violates this Court's ruling and the general requirements that discovery be limited to relevant information and be proportional to the needs of the case. *See* FED. R. CIV. P. 26(b); *see also In re Abilify Prods. Liab. Litig.*, 2017 U.S. Dist. LEXIS 161660, at *25-26 (N.D. Fla. Sep. 29, 2017) (denying

Plaintiffs' request for discovery regarding other drugs in the same class because "information regarding other drugs is irrelevant and not proportional to the needs of the case.").

**<u>Objection as to definition of disease state:</u>**

Bayer further objects to this Request for Admission because Plaintiffs' definition of PTC/IH is vague and ambiguous. Plaintiffs define "PTC/IH" as "the condition known by many names, *including but not limited to*: pseudotumor cerebri, pseudotumor cerebri syndrome, benign intracranial hypertension, intracranial hypertension, idiopathic intracranial hypertension, and increased intracranial hypertension." *See* Plaintiffs' Second Set of Requests for Admissions to Defendants Bayer HealthCare Pharm. Inc., Bayer Oy and Bayer AG at p. 2 (emphasis added). PTC/IIH is the clinical syndrome of raised intracranial pressure, in the absence of space-occupying lesions or vascular lesions, without enlargement of the cerebral ventricles, for which no causative factor can be identified. Plaintiffs' request for Bayer to admit a term regarding a condition known by many [undefined] names, including but not limited to only certain named conditions, is vague, ambiguous, and fails to describe the information sought with reasonable particularity. *See T. Rowe Price Small-Cap Fund, Inc.*, 174 F.R.D. at 46 (holding that requests for admission should be "simple and concise and state facts singly, so that they can easily and coherently be admitted or denied.").

**<u>REQUEST FOR ADMISSION NO. 38:</u>** Admit that you have never studied the use of Mirena in women with PTC/IH.

**<u>RESPONSE:</u>**

Subject to the objections and clarifications below, Bayer denies this Request.

**Objection as to specific terms:**

Bayer objects to this Request for Admission because the phrase "studied the use of Mirena in women with PTC/IH" as used in this Request is vague, ambiguous and undefined.

**Objection as to definition of disease state:**

Bayer further objects to this Request for Admission because Plaintiffs' definition of PTC/IH is vague and ambiguous. Plaintiffs define "PTC/IH" as "the condition known by many names, *including but not limited to*: pseudotumor cerebri, pseudotumor cerebri syndrome, benign intracranial hypertension, intracranial hypertension, idiopathic intracranial hypertension, and increased intracranial hypertension." *See* Plaintiffs' Second Set of Requests for Admissions to Defendants Bayer HealthCare Pharm. Inc., Bayer Oy and Bayer AG at p. 2 (emphasis added). PTC/IIH is the clinical syndrome of raised intracranial pressure, in the absence of space-occupying lesions or vascular lesions, without enlargement of the cerebral ventricles, for which no causative factor can be identified. Plaintiffs' request for Bayer to admit a term regarding a condition known by many [undefined] names, including but not limited to only certain named conditions, is vague, ambiguous, and fails to describe the information sought with reasonable particularity. *See T. Rowe Price Small-Cap Fund, Inc.*, 174 F.R.D. at 46 (holding that requests for admission should be "simple and concise and state facts singly, so that they can easily and coherently be admitted or denied.").

**REQUEST FOR ADMISSION NO. 39:** Admit that you have not conducted any studies limited to use of Mirena® in women with a body mass index ("BMI") of 30 or greater.

**RESPONSE:**

Subject to the objections and clarifications below, Bayer admits that it has not conducted studies where all study participants have a BMI of 30 or greater, but otherwise denies this Request as it has conducted studies including study participants with BMI of 30 or greater.

**Objection as to specific terms:**

Bayer objects to this Request for Admission because the phrase "not conducted any studies" and "limited to the use of Mirena" as used in this Request is vague, ambiguous and undefined.

**REQUEST FOR ADMISSION NO. 40:** Admit that there is published, peer-reviewed literature, describing a plausible biological mechanism by which steroid hormones and mitochondrial metabolites may cause PTC/IH.

**RESPONSE:**

Subject to the objections and clarifications below, Bayer denies this Request.

**Objection based on the scope of the products at issue:**

Bayer objects to this Request to the extent the Request is not limited to Mirena. The Court has already ruled as to the scope of permissible discovery as it relates to non-Mirena levonorgestrel-containing or levonorgestrel-releasing products. *See* 7/27/17 CMC Trans. at 56:19-57:15 (denying Plaintiffs' request for discovery of products not at issue in this case as disproportionate and highly burdensome) and 10/24/17 CMC Trans. at 25:18-24 and 76:21-77:9. This Request for Admission, as phrased, seeks information not limited to Mirena and thus violates this Court's ruling and the general requirements that discovery be limited to relevant information and be proportional to the needs of the case. *See* FED. R. CIV. P. 26(b); *see also In re Abilify Prods. Liab. Litig.*, 2017 U.S. Dist. LEXIS 161660, at *25-26 (denying Plaintiffs' request for discovery

regarding other drugs in the same class because "information regarding other drugs is irrelevant and not proportional to the needs of the case.").

**Objection as to specific terms:**

Bayer further objects to this Request for Admission because the phrase "describing a plausible biological mechanism" as used in this Request is vague, ambiguous and undefined.

**Objection as to definition of disease state:**

Bayer further objects to this Request for Admission because Plaintiffs' definition of PTC/IH is vague and ambiguous. Plaintiffs define "PTC/IH" as "the condition known by many names, *including but not limited to*: pseudotumor cerebri, pseudotumor cerebri syndrome, benign intracranial hypertension, intracranial hypertension, idiopathic intracranial hypertension, and increased intracranial hypertension." *See* Plaintiffs' Second Set of Requests for Admissions to Defendants Bayer HealthCare Pharm. Inc., Bayer Oy and Bayer AG at p. 2 (emphasis added). PTC/IIH is the clinical syndrome of raised intracranial pressure, in the absence of space-occupying lesions or vascular lesions, without enlargement of the cerebral ventricles, for which no causative factor can be identified. Plaintiffs' request for Bayer to admit a term regarding a condition known by many [undefined] names, including but not limited to only certain named conditions, is vague, ambiguous, and fails to describe the information sought with reasonable particularity. *See T. Rowe Price Small-Cap Fund, Inc.*, 174 F.R.D. at 46 (holding that requests for admission should be "simple and concise and state facts singly, so that they can easily and coherently be admitted or denied.").

**REQUEST FOR ADMISSION NO. 41:** Admit that there is a causal association between steroid hormones and PTC/IH.

**RESPONSE:**

Subject to the objections and clarifications below, Bayer denies this Request.

**Objection based on the scope of the products at issue:**

Bayer objects to this Request to the extent the Request is not limited to Mirena. The Court has already ruled as to the scope of permissible discovery as it relates to non-Mirena levonorgestrel-containing or levonorgestrel-releasing products. *See* 7/27/17 CMC Trans. at 56:19-57:15 (denying Plaintiffs' request for discovery of products not at issue in this case as disproportionate and highly burdensome) and 10/24/17 CMC Trans. at 25:18-24 and 76:21-77:9. This Request for Admission, as phrased, seeks information not limited to Mirena and thus violates this Court's ruling and the general requirements that discovery be limited to relevant information and be proportional to the needs of the case. *See* FED. R. CIV. P. 26(b); *see also In re Abilify Prods. Liab. Litig*., 2017 U.S. Dist. LEXIS 161660, at *25-26 (denying Plaintiffs' request for discovery regarding other drugs in the same class because "information regarding other drugs is irrelevant and not proportional to the needs of the case.").

**Objection as to specific terms:**

Bayer further objects to this Request for Admission because the phrase "steroid hormones" as used in this Request is vague, ambiguous and undefined.

**Objection as to definition of disease state:**

Bayer further objects to this Request for Admission because Plaintiffs' definition of PTC/IH is vague and ambiguous. Plaintiffs define "PTC/IH" as "the condition known by many names, *including but not limited to*: pseudotumor cerebri, pseudotumor cerebri syndrome, benign intracranial hypertension, intracranial hypertension, idiopathic intracranial hypertension, and increased intracranial hypertension." *See* Plaintiffs' Second Set of Requests for Admissions to Defendants Bayer HealthCare Pharm. Inc., Bayer Oy and Bayer AG at p. 2 (emphasis added).

PTC/IIH is the clinical syndrome of raised intracranial pressure, in the absence of space-occupying lesions or vascular lesions, without enlargement of the cerebral ventricles, for which no causative factor can be identified. Plaintiffs' request for Bayer to admit a term regarding a condition known by many [undefined] names, including but not limited to only certain named conditions, is vague, ambiguous, and fails to describe the information sought with reasonable particularity. *See T. Rowe Price Small-Cap Fund, Inc.*, 174 F.R.D. at 46 (holding that requests for admission should be "simple and concise and state facts singly, so that they can easily and coherently be admitted or denied.").

**REQUEST FOR ADMISSION NO. 42:** Admit that there is at least one plausible biological mechanism through which levonorgestrel can cause PTC/IH.

**RESPONSE:**

Subject to the objections and clarifications below, Bayer denies this Request.

**Objection based on the scope of the products at issue:**

Bayer objects to this Request to the extent the Request is not limited to Mirena. The Court has already ruled as to the scope of permissible discovery as it relates to non-Mirena levonorgestrel-containing or levonorgestrel-releasing products. *See* 7/27/17 CMC Trans. at 56:19-57:15 (denying Plaintiffs' request for discovery of products not at issue in this case as disproportionate and highly burdensome) and 10/24/17 CMC Trans. at 25:18-24 and 76:21-77:9. This Request for Admission, as phrased, seeks information not limited to Mirena and thus violates this Court's ruling and the general requirements that discovery be limited to relevant information and be proportional to the needs of the case. *See* FED. R. CIV. P. 26(b); *see also In re Abilify Prods. Liab. Litig.*, 2017 U.S. Dist. LEXIS 161660, at *25-26 (denying Plaintiffs' request for discovery

regarding other drugs in the same class because "information regarding other drugs is irrelevant and not proportional to the needs of the case.").

**Objection as to specific terms:**

Bayer further objects to this Request for Admission because the phrase "plausible biological mechanism" as used in this Request is vague, ambiguous and undefined.

**Objection as to definition of disease state:**

Bayer further objects to this Request for Admission because Plaintiffs' definition of PTC/IH is vague and ambiguous. Plaintiffs define "PTC/IH" as "the condition known by many names, *including but not limited to*: pseudotumor cerebri, pseudotumor cerebri syndrome, benign intracranial hypertension, intracranial hypertension, idiopathic intracranial hypertension, and increased intracranial hypertension." *See* Plaintiffs' Second Set of Requests for Admissions to Defendants Bayer HealthCare Pharm. Inc., Bayer Oy and Bayer AG at p. 2 (emphasis added). PTC/IIH is the clinical syndrome of raised intracranial pressure, in the absence of space-occupying lesions or vascular lesions, without enlargement of the cerebral ventricles, for which no causative factor can be identified. Plaintiffs' request for Bayer to admit a term regarding a condition known by many [undefined] names, including but not limited to only certain named conditions, is vague, ambiguous, and fails to describe the information sought with reasonable particularity. *See T. Rowe Price Small-Cap Fund, Inc.*, 174 F.R.D. at 46 (holding that requests for admission should be "simple and concise and state facts singly, so that they can easily and coherently be admitted or denied.").

**REQUEST FOR ADMISSION NO. 43:** Admit that there is at least one plausible biological mechanism through which Mirena can cause or contribute to PTC/IH.

**RESPONSE:**

Subject to the objections and clarifications below, Bayer denies this Request.

**Objection as to specific terms:**

Bayer objects to this Request for Admission because the phrase "plausible biological mechanism" as used in this Request is vague, ambiguous and undefined.

**Objection as to definition of disease state:**

Bayer further objects to this Request because Plaintiffs' definition of PTC/IH is vague and ambiguous. Plaintiffs define "PTC/IH" as "the condition known by many names, *including but not limited to*: pseudotumor cerebri, pseudotumor cerebri syndrome, benign intracranial hypertension, intracranial hypertension, idiopathic intracranial hypertension, and increased intracranial hypertension." *See* Plaintiffs' Second Set of Requests for Admissions to Defendants Bayer HealthCare Pharm. Inc., Bayer Oy and Bayer AG at p. 2 (emphasis added). PTC/IIH is the clinical syndrome of raised intracranial pressure, in the absence of space-occupying lesions or vascular lesions, without enlargement of the cerebral ventricles, for which no causative factor can be identified. Plaintiffs' request for Bayer to admit a term regarding a condition known by many [undefined] names, including but not limited to only certain named conditions, is vague, ambiguous, and fails to describe the information sought with reasonable particularity. *See T. Rowe Price Small-Cap Fund, Inc.*, 174 F.R.D. at 46 (holding that requests for admission should be "simple and concise and state facts singly, so that they can easily and coherently be admitted or denied.").

**REQUEST FOR ADMISSION NO. 44:** Admit that you developed, or are developing, a new progestin, at least in part, for purposes of minimizing the systemic hormonal side effects of Mirena.

**RESPONSE:**

Bayer objects to this Request for the reasons set forth below.

**Objection based on the scope of the products at issue:**

Bayer objects to this Request to the extent the Request is not limited to Mirena. The Court has already ruled as to the scope of permissible discovery as it relates to non-Mirena levonorgestrel-containing or levonorgestrel-releasing products. *See* 7/27/17 CMC Trans. at 56:19-57:15 (denying Plaintiffs' request for discovery of products not at issue in this case as disproportionate and highly burdensome) and 10/24/17 CMC Trans. at 25:18-24 and 76:21-77:9. This Request for Admission, as phrased, seeks information not limited to Mirena and thus violates this Court's ruling and the general requirements that discovery be limited to relevant information and be proportional to the needs of the case. *See* FED. R. CIV. P. 26(b); *see also In re Abilify Prods. Liab. Litig.*, 2017 U.S. Dist. LEXIS 161660, at *25-26 (denying Plaintiffs' request for discovery regarding other drugs in the same class because "information regarding other drugs is irrelevant and not proportional to the needs of the case.").

**Objection as to vagueness of definition of systemic side effects of Mirena:**

Bayer further objects to Plaintiffs use of the phrase "systemic hormonal side of effects" of Mirena in this Request as used by Plaintiffs as vague, ambiguous and undefined. Bayer should not be required to guess what alleged systemic hormonal side effects Plaintiffs are referring to in this Request. Such a vague Request is improper. *See Herrera*, 143 F.R.D. at 549 (stating that requests for admission should be direct, simple, and restricted to separate relevant facts).

**REQUEST FOR ADMISSION NO. 45:** Admit that you developed Skyla®, at least in part, for purposes of minimizing the systemic hormonal side effects of Mirena.

**RESPONSE:**

Bayer objects to this Request for the reasons set forth below.

**Objection based on the scope of the products at issue:**

Bayer objects to this Request to the extent the Request is not limited to Mirena. The Court has already ruled as to the scope of permissible discovery as it relates to non-Mirena levonorgestrel-containing or levonorgestrel-releasing products. *See* 7/27/17 CMC Trans. at 56:19-57:15 (denying Plaintiffs' request for discovery of products not at issue in this case as disproportionate and highly burdensome) and 10/24/17 CMC Trans. at 25:18-24 and 76:21-77:9. This Request for Admission, as phrased, seeks information not limited to Mirena and thus violates this Court's ruling and the general requirements that discovery be limited to relevant information and be proportional to the needs of the case. *See* FED. R. CIV. P. 26(b); *see also In re Abilify Prods. Liab. Litig.*, 2017 U.S. Dist. LEXIS 161660, at *25-26 (denying Plaintiffs' request for discovery regarding other drugs in the same class because "information regarding other drugs is irrelevant and not proportional to the needs of the case.").

**Objection as to vagueness of definition of systemic hormonal side effects of Mirena:**

Bayer further objects to Plaintiffs use of the phrase "systemic hormonal side of effects" of Mirena in this Request as used by Plaintiffs as vague, ambiguous and undefined. Bayer should not be required to guess what alleged systemic hormonal side effects Plaintiffs are referring to in this Request. Such a vague Request is improper. *See Herrera,* 143 F.R.D. at 549 (stating that requests for admission should be direct, simple, and restricted to separate relevant facts).

**REQUEST FOR ADMISSION NO. 46:** Admit that you developed Kyleena, at least in part, for purposes of minimizing the systemic hormonal side effects of Mirena.

**RESPONSE:**

Bayer objects to this Request for the reasons set forth below.

**<u>Objection based on the scope of the products at issue:</u>**

Bayer objects to this Request to the extent the Request is not limited to Mirena. The Court has already ruled as to the scope of permissible discovery as it relates to non-Mirena levonorgestrel-containing or levonorgestrel-releasing products. *See* 7/27/17 CMC Trans. at 56:19-57:15 (denying Plaintiffs' request for discovery of products not at issue in this case as disproportionate and highly burdensome) and 10/24/17 CMC Trans. at 25:18-24 and 76:21-77:9. This Request for Admission, as phrased, seeks information not limited to Mirena and thus violates this Court's ruling and the general requirements that discovery be limited to relevant information and be proportional to the needs of the case. *See* FED. R. CIV. P. 26(b); *see also In re Abilify Prods. Liab. Litig*., 2017 U.S. Dist. LEXIS 161660, at *25-26 (denying Plaintiffs' request for discovery regarding other drugs in the same class because "information regarding other drugs is irrelevant and not proportional to the needs of the case.").

**<u>Objection as to vagueness of definition of systemic hormonal side effects of Mirena:</u>**

Bayer further objects to Plaintiffs use of the phrase "systemic hormonal side of effects" of Mirena in this Request as used by Plaintiffs as vague, ambiguous and undefined. Bayer should not be required to guess what alleged systemic hormonal side effects Plaintiffs are referring to in this Request. Such a vague Request is improper. *See Herrera,* 143 F.R.D. at 549 (stating that requests for admission should be direct, simple, and restricted to separate relevant facts).

**<u>REQUEST FOR ADMISSION NO. 47:</u>** Admit that there is published, peer-reviewed literature, finding a statistically significant increased risk of PTC/IH in users of the levonorgestrel-releasing intrauterine system ("LNG-IUS").

**RESPONSE:**

Subject to the objections and clarifications below, Bayer denies this Request as the authors of this study specifically concluded that their findings do not suggest that the use of Mirena can cause IIH, and that the results of their risk analysis must be interpreted with great caution as they were unable to capture information on relevant confounders such as body weight or age distribution.

**Objection to an Improper Request for Admission:**

Bayer objects to this Request as overly broad, unduly burdensome, unclear, vague, ambiguous and improper under FED. R. CIV. P. 36. *See Moosman*, 358 F.2d at 688 ("[T]he purpose of Rule 36 is to expedite trial by removing uncontested issues."); *United Coal Cos.*, 839 F.2d at 968 (stating that requests for admission should state the fact in such a way that it can be denied or admitted "with an absolute minimum of explanation or qualification."). Requests for admission are not a discovery device and requests should be simple and direct, not vague or ambiguous. *See Wiwa v. Royal Dutch Petroleum Co.*, No. 96 Civ. 8386, 2009 U.S. Dist. LEXIS 45621 at *15-16 (S.D.N.Y. 2009). This Request cannot be admitted or denied unless the entirety of each unidentified individual case safety reports are properly analyzed. *See Diederich*, 132 F.R.D. at 619 ("Specificity and detail is, thus, necessary and appropriate in each individual request, so that the extent of each admission or denial can be ascertained without excessive qualification."); *Herrera*, 143 F.R.D. at 549 (stating that requests for admission should be direct, simple, and restricted to separate relevant facts.). Bayer's 2017 Signal Assessment to BfArM specifically addresses this study including the author's conclusions and admitted limitations of their study.

**Objection as to definition of disease state:**

Bayer further objects to this Request because Plaintiffs' definition of PTC/IH is vague and ambiguous. Plaintiffs define "PTC/IH" as "the condition known by many names, *including but not limited to*: pseudotumor cerebri, pseudotumor cerebri syndrome, benign intracranial hypertension, intracranial hypertension, idiopathic intracranial hypertension, and increased intracranial hypertension." *See* Plaintiffs' Second Set of Requests for Admissions to Defendants Bayer HealthCare Pharm. Inc., Bayer Oy and Bayer AG at p. 2 (emphasis added). PTC/IIH is the clinical syndrome of raised intracranial pressure, in the absence of space-occupying lesions or vascular lesions, without enlargement of the cerebral ventricles, for which no causative factor can be identified. Plaintiffs' request for Bayer to admit a term regarding a condition known by many [undefined] names, including but not limited to only certain named conditions, is vague, ambiguous, and fails to describe the information sought with reasonable particularity. *See T. Rowe Price Small-Cap Fund, Inc.*, 174 F.R.D. at 46 (holding that requests for admission should be "simple and concise and state facts singly, so that they can easily and coherently be admitted or denied.").

**REQUEST FOR ADMISSION NO. 48:** Admit that you have contacted or attempted to contact, or someone on your behalf has contacted or attempted to contact, one or more of the authors of the 2015 abstract "The relationship between the levonorgestrel-releasing intrauterine system and idiopathic intracranial hypertension," regarding the association between levonorgestrel and PTC/IH.

**RESPONSE:**

Subject to the objections and clarifications below, Bayer states that it conducted a "reasonable inquiry" of its employees as that term is defined under the Federal Rules of Civil

Procedure, including interviewing employees with job responsibilities who would have been responsible for contacting authors of the 2015 abstract identified in this Request regarding the association between levonorgestrel and IIH, if any such contact was made. *See T. Rowe Price Small Cap Fund*, 174 F.R.D at 43 (stating that a reasonable inquiry includes investigation and inquiry of any of defendant's officers, administrators, agents, employees . . . who conceivably, but in realistic terms, may have information which may lead to or furnish the necessary and appropriate response) (citations omitted). Based upon Bayer's reasonable inquiry, Bayer denies this Request.

**<u>Objection to a Request outside of the scope of General Causation Discovery:</u>**

Bayer objects to this Request because it is outside the scope of general causation discovery permitted by the Court.

**<u>Objection to the Extent This Request Seeks Privileged or Protected Information</u>**

Bayer further objects to this Request to the extent the Request seeks information regarding conversations between Bayer's attorneys and third-parties. Discovery into such communications between Bayer's attorneys and third-parties would reveal the mental impressions, conclusions, or legal theories of a party's attorney or other representative concerning the litigation and therefore, are protected by the attorney-work product privilege. *See* FED. R. CIV. P. 26(b)(3)(B); *see also Seven Hanover Assoc. v. Jones Lang LaSalle Americas, Inc.*, No. 04 Civ. 4143, 2005 U.S. Dist. LEXIS 32016 at *3 n. 1 (S.D.N.Y. December 7, 2005 (stating that a party is not entitled, to the identification of individuals who have been interviewed by the other party's attorneys); *Morgan v. City of New York*, No. 00 Civ. 9172, 2002 U.S. Dist. LEXIS 14465 at *3 (S.D.N.Y. August 6, 2002) (sustaining an objection to identification of individuals contacted by a party of her agents); *Tracy v. NVR, Inc.*, 250 F.R.D. 130, 132 (W.D.N.Y. 2008) (stating "[D]isclosure of the identities of witnesses interviewed and contacted would inevitably teach the requesting party which

individuals opposing counsel considers more or less valuable as witnesses and how he or she is preparing for trial." (internal brackets and quotation marks omitted); *Moore v. Dan Holdings, Inc.*, No. 1:12CV503, 2013 U.S. Dist. LEXIS 61378 at * 18-19 (M.D.N.C. April 30, 2103) (stating that although Defendants cannot prevent fact witnesses from presenting information during the course of discovery simply because such witnesses also provided information to Defendants' counsel, Plaintiff may not attempt to learn the underlying facts simply by using discovery to inquire about the investigation conducted by Defendants' counsel).

**Objection to an Improper Request:**

Bayer further objects to this Request as overly broad, unduly burdensome, unclear, vague, ambiguous and improper under FED. R. CIV. P. 36. *See Moosman*, 358 F.2d at 688 ("[T]he purpose of Rule 36 is to expedite trial by removing uncontested issues."); *United Coal Cos.*, 839 F.2d at 968 (stating that requests for admission should state the fact in such a way that it can be denied or admitted "with an absolute minimum of explanation or qualification."). This Request is not limited in time, to the product at issue in this lawsuit, or in scope. This overly broad, unduly burdensome, unclear, vague, ambiguous and improper Request makes an admission or denial impossible. *See Diederich*, 132 F.R.D. at 619 ("Specificity and detail is, thus, necessary and appropriate in each individual request, so that the extent of each admission or denial can be ascertained without excessive qualification."); *Herrera*, 143 F.R.D. at 549 (stating that requests for admission should be direct, simple, and restricted to separate relevant facts.). To the extent the scope of this Request involves an alleged attempt by Bayer to improperly influence the results of this abstract, the Request is denied.

**REQUEST FOR ADMISSION NO. 49:** Admit that you have contacted or attempted to contact, or someone on your behalf has contacted or attempted to contact, one or more

of the authors of the 2017 publication "An Estimation of the Risk of Pseudotumor Cerebri among Users of the Levonorgestrel Intrauterine Device," regarding the association between levonorgestrel and PTC/IH.

**RESPONSE:**

Subject to the objections and clarification below, Bayer states that it conducted a "reasonable inquiry" of its employees as that term is defined under the Federal Rules of Civil Procedure, including interviewing employees with job responsibilities who would have been responsible for contacting authors of the 2017 publication identified in this Request regarding the association between levonorgestrel and IIH, if any such contact was made. *See T. Rowe Price Small Cap Fund*, 174 F.R.D at 43 (stating that a reasonable inquiry includes investigation and inquiry of any of defendant's officers, administrators, agents, employees . . . who conceivably, but in realistic terms, may have information which may lead to or furnish the necessary and appropriate response) (citations omitted). Based upon Bayer's reasonable inquiry, Bayer denies this Request.

**Objection to a Request outside of the scope of General Causation Discovery:**

Bayer objects to this Request because it is outside the scope of general causation discovery permitted by the Court.

**Objection to the Extent This Request Seeks Privileged or Protected Information**

Bayer further objects to this Request to the extent the Request seeks information regarding conversations between Bayer's attorneys and third-parties. Discovery into such communications between Bayer's attorneys and third-parties would reveal the mental impressions, conclusions, or legal theories of a party's attorney or other representative concerning the litigation and therefore, are protected by the attorney-work product privilege. *See* FED. R. CIV. P. 26(b)(3)(B); *see also Seven Hanover Assoc.*, 2005 U.S. Dist. LEXIS 32016 at *3 n. 1 (stating that a party is not entitled,

to the identification of individuals who have been interviewed by the other party's attorneys); *Morgan*, 2002 U.S. Dist. LEXIS 14465 at *3 (sustaining an objection to identification of individuals contacted by a party of her agents); *Tracy*, 250 F.R.D. at 132 (stating "[D]isclosure of the identities of witnesses interviewed and contacted would inevitably teach the requesting party which individuals opposing counsel considers more or less valuable as witnesses and how he or she is preparing for trial." (internal brackets and quotation marks omitted); *Moore*, 2013 U.S. Dist. LEXIS 61378 at * 18-19 (stating that although Defendants cannot prevent fact witnesses from presenting information during the course of discovery simply because such witnesses also provided information to Defendants' counsel, Plaintiff may not attempt to learn the underlying facts simply by using discovery to inquire about the investigation conducted by Defendants' counsel).

**Objection to an Improper Request:**

Bayer further objects to this Request as overly broad, unduly burdensome, unclear, vague, ambiguous and improper under FED. R. CIV. P. 36. *See Moosman*, 358 F.2d at 688 ("[T]he purpose of Rule 36 is to expedite trial by removing uncontested issues."); *United Coal Cos.*, 839 F.2d at 968 (stating that requests for admission should state the fact in such a way that it can be denied or admitted "with an absolute minimum of explanation or qualification."). This Request is not limited in time, to the product at issue in this lawsuit, or in scope. This overly broad, unduly burdensome, unclear, vague, ambiguous and improper Request makes an admission or denial impossible. *See Diederich*, 132 F.R.D. at 619 ("Specificity and detail is, thus, necessary and appropriate in each individual request, so that the extent of each admission or denial can be ascertained without excessive qualification."); *Herrera,*, 143 F.R.D. at 549 (stating that requests for admission should be direct, simple, and restricted to separate relevant facts.). To the extent the

scope of this Request involves an alleged attempt by Bayer to improperly influence the results of this publication, the Request is denied.

**REQUEST FOR ADMISSION NO. 50:** Admit that you have contacted or attempted to contact, or someone on your behalf has contacted or attempted to contact, one or more of the authors of the 2015 publication "Risk of intracranial hypertension with intrauterine levonorgestrel" after December 16, 2016, regarding the association between levonorgestrel and PTC/IH.

**RESPONSE:**

Subject to the objections and clarification below, Bayer states that it conducted a "reasonable inquiry" of its employees as that term is defined under the Federal Rules of Civil Procedure, including interviewing employees with job responsibilities who would have been responsible for contacting authors of the 2017 publication identified in this Request regarding the association between levonorgestrel and IIH, if any such contact was made. *See T. Rowe Price Small Cap Fund*, 174 F.R.D at 43 (stating that a reasonable inquiry includes investigation and inquiry of any of defendant's officers, administrators, agents, employees . . . who conceivably, but in realistic terms, may have information which may lead to or furnish the necessary and appropriate response) (citations omitted). Based upon Bayer's reasonable inquiry, Bayer denies this Request.

**Objection to a Request outside of the scope of General Causation Discovery:**

Bayer objects to this Request because it is outside the scope of general causation discovery permitted by the Court.

**Objection to the Extent This Request Seeks Privileged or Protected Information**

Bayer further objects to this Request to the extent the Request seeks information regarding conversations between Bayer's attorneys and third-parties. Discovery into such communications between Bayer's attorneys and third-parties would reveal the mental impressions, conclusions, or legal theories of a party's attorney or other representative concerning the litigation and therefore, are protected by the attorney-work product privilege. *See* FED. R. CIV. P. 26(b)(3)(B); *see also Seven Hanover Assoc.*, 2005 U.S. Dist. LEXIS 32016 at *3 n. 1 (stating that a party is not entitled, to the identification of individuals who have been interviewed by the other party's attorneys); *Morgan*, 2002 U.S. Dist. LEXIS 14465 at *3 (sustaining an objection to identification of individuals contacted by a party of her agents); *Tracy*, 250 F.R.D. at 132 (stating "[D]isclosure of the identities of witnesses interviewed and contacted would inevitably teach the requesting party which individuals opposing counsel considers more or less valuable as witnesses and how he or she is preparing for trial." (internal brackets and quotation marks omitted); *Moore*, 2013 U.S. Dist. LEXIS 61378 at * 18-19 (stating that although Defendants cannot prevent fact witnesses from presenting information during the course of discovery simply because such witnesses also provided information to Defendants' counsel, Plaintiff may not attempt to learn the underlying facts simply by using discovery to inquire about the investigation conducted by Defendants' counsel).

**Objection to an Improper Request:**

Bayer further objects to this Request as overly broad, unduly burdensome, unclear, vague, ambiguous and improper under FED. R. CIV. P. 36. *See Moosman*, 358 F.2d at 688 ("[T]he purpose of Rule 36 is to expedite trial by removing uncontested issues."); *United Coal Cos.*, 839 F.2d at 968 (stating that requests for admission should state the fact in such a way that it can be denied or admitted "with an absolute minimum of explanation or qualification."). This Request is not

limited in time, to the product at issue in this lawsuit, or in scope. This overly broad, unduly burdensome, unclear, vague, ambiguous and improper Request makes an admission or denial impossible. *See Diederich*, 132 F.R.D. at 619 ("Specificity and detail is, thus, necessary and appropriate in each individual request, so that the extent of each admission or denial can be ascertained without excessive qualification."); *Herrera,* 143 F.R.D. at 549 (stating that requests for admission should be direct, simple, and restricted to separate relevant facts.). To the extent the scope of this Request involves an alleged attempt by Bayer to improperly influence the results of this publication, the Request is denied.

Dated: December 4, 2017

Respectfully submitted,

*/s/E. James Shepherd*
E. James Shepherd
Shook, Hardy & Bacon LLP
600 Travis Street, Suite 3400
Houston, TX 77072
eshepherd@shb.com

Shayna S. Cook
Goldman Ismail Tomaselli Brennan
& Baum LLP
564 W. Randolph St., Suite 400
Chicago IL 60661
scook@goldmanismail.com

Paul W. Schmidt
Covington & Burling LLP
620 Eighth Avenue
New York, NY 10018
pschmidt@cov.com

***Counsel for Defendants,***
***Bayer Healthcare Pharmaceuticals Inc.,***
***Bayer Pharma AG and Bayer Oy***

**CERTIFICATE OF SERVICE**

I hereby certify by my signature below that a true and correct copy of the foregoing document was served by electronic mail on the following attorneys of record on this the 4th day of December 2017:

Lawrence L. Jones II
JONES WARD PLC
1205 E. Washington Street
Suite 111
Louisville, Kentucky 40207
T: 502-882-6000
larry@jonesward.com
*Co-Lead Counsel for Plaintiffs*

Martin D. Crump
Davis & Crump, P.C.
2601 Fourteenth Street
Gulfport, MS 39501
P: 228.863.6000
martincrump@daviscrump.com
*Co-Lead Counsel for Plaintiffs*

Maxwell S. Kennerly
Kennerly Loutey, LLC
601 Walnut Street, #1150W
Philadelphia, PA 19106
P: 215-948-2718
msk@thlawyer.com
*Liaison Counsel for Plaintiffs*

*/s/E. James Shepherd*
E. James Shepherd