**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**IN RE:**

**MIRENA IUS LEVONORGESTREL-RELATED PRODUCTS LIABILITY LITIGATION (NO. II)**

**17-MD-2767 (PAE)**
**17-MC-2767 (PAE)**

***This Document Relates to All Actions***

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE THE GENERAL CAUSATION EXPERT TESTIMONY OF WILLIAM JUSKO, PH.D.**

## PRELIMINARY STATEMENT

Plaintiffs neither misstate nor misunderstand Dr. Jusko's opinions. To the contrary, Dr. Jusko, and Bayer in its opposition, misstates and misunderstands Plaintiffs' mechanism opinions and offers in rebuttal unsupported assumptions. Even if Dr. Jusko's proffered testimony is simply that Plaintiffs' opinions are "entirely speculative," he must provide *reliable* support for this opinion for his testimony to be reliable under *Daubert*. In sum, Dr. Jusko's testimony consists of admittedly subjective personal opinions and concededly unfounded challenges to the opinions of Plaintiffs' experts and their underpinnings. These are not reliable bases for even a rebuttal expert, and Dr. Jusko's testimony must be excluded.

## ARGUMENT

### I. Bayer's Strange Concession that Dr. Jusko Provides the Same Subjective Opinions in His Peer-Reviewed Study Does Not Render These Opinions Reliable or Helpful to the Trier of Fact

As Bayer notes parenthetically, "the district court must 'make certain that an expert … employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Dft. Opp. (Dkt 203), at p. 3 (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). While Dr. Jusko's opinions here certainly mirror his work in the peer-reviewed literature, he admits in his publication and again in his sworn deposition testimony what he fails to admit in his expert report: these opinions are entirely subjective. *See* Plf. Ex. B (Dkt 135-3) Jusko 2018 Dep. at 32:14-32:21 ("That's a rather subjective term"); *id.* at 36:22-37:5 ("The consideration of low, moderate or high variability is both subjective and context related"); *see also* Plf. Ex. G (Dkt 135-12) Jusko 2017 at p. 4 ("There appears to be no consensus in PK as to what constitutes low, moderate or large intersubject variability").

Dr. Jusko's admission that his characterization of LNG blood concentrations is entirely subjective and contrary to both the FDA-approved Mirena label and Bayer's internal documents,

does nothing to transform his opinions into anything other than exactly that: *entirely subjective*. *See* Plf. Ex. B (Dkt 135-3) Jusko 2018 Dep. at 50:21-50:23 (claiming that his assessment is "very comprehensive. It's much more appropriate"); *id.* at 42:15-43:9 ("my more careful assessment of the literature for Mirena, I wouldn't agree with this.") Therefore, while compelling on its face, Bayer's argument that Dr. Jusko "applied the same methods in forming that opinion as did in his peer-reviewed study" fails as applied. Dr. Jusko's concededly subjective opinions on the variability of LNG blood concentrations must be excluded.

## II. Plaintiffs' "March" through the Literature Regarding LNG's Affinity at the MR Underscores Dr. Jusko's Admittedly Flawed Methodology

Although Bayer dismisses Plaintiffs' "march" through the literature at Dr. Jusko's deposition, Dr. Jusko has admittedly *never* performed this analysis despite testifying under oath that such an undertaking would be necessary to reach a reliable opinion. Facing this inconvenient truth, Bayer instead clings to Dr. Jusko's flawed foundation and misunderstands Plaintiffs' citation to Moore, claiming: "Plaintiffs concede that he accurately identified at least one peer-reviewed article indicating that LNG acts as an MR ***antagonist***—the opposite of what their MR Theory requires. Dft. Opp. (Dkt 203) at p. 5 (citing Plf. Br. at 11) (emphasis in original). Rather, Plaintiffs demonstrate that the Moore article miscites its references, and Dr. Jusko's reliance thereon is thus misplaced. Plf. Br. (Dkt 135) at pp. 11-13.

At his deposition, Dr. Jusko conceded that he would need to review *all of the underlying references* to examine their methodology and conclusions before reaching an appropriate opinion, which he also conceded he has never done. Plf. Ex. B (Dkt 135-3) Jusko 2018 Dep. at 164:14-164:24 ("I have not"); *id.* at 166:19-167:17 ("I -- I didn't trace them back.") Whereas Dr. Jusko has never independently undertaken this review, Plaintiffs' counsel has twice done so and each time Dr. Jusko has admitted under oath that *none* of the underlying articles support either Moore's

claim or Dr. Jusko's opinion relying thereon. Plf. Ex. I (Dkt 135-27) Jusko 2016 Dep. at 222:10-222:13; Plf. Ex. B (Dkt 135-3) Jusko 2018 Dep. at 161:17-162:1. Finally, despite Dr. Jusko's concession at his 2016 deposition and Dr. Jusko's review of that prior testimony, Dr. Jusko's 2018 report *still* relies upon Moore for the contention that LNG acts as an antimineralocorticoid. Dr. Jusko's opinions admittedly lack a reliable basis, and Bayer's misrepresentation of Plaintiffs' citation does nothing to support Dr. Jusko's faulty claim.

## III. Bayer Concedes that Dr. Jusko's "AR" Opinions Were Developed Solely for Litigation Despite Arguing Elsewhere that this Approach Fails the *Daubert* Factors

Plaintiffs address Bayer's claim that Dr. Johanson's opinions are litigation-driven at length in Plaintiffs' Memorandum in Opposition to Defendants' Motion to Exclude Dr. Johanson (Dkt 187), and do not intend to argue inconsistently here for the exclusion of Dr. Jusko's opinions. However, unlike Dr. Johanson, Dr. Jusko's opinions *do not* "grow[] naturally and directly out of research [he has] conducted independent of the litigation," but rather Dr. Jusko "developed [his] opinions expressly for purposes of testifying." *See* Plf. Opp. to Mot. To Excl. Johanson (Dkt 187) at pp. 11-12 (quoting *Daubert v. Merrell Dow Pharm.*, 43 F.3d 1311, 1317 (9th Cir. 1995)). Although Bayer admits that Dr. Jusko never even considered an AR-mechanism until three weeks prior to the disclosure of his opinions, Bayer argues that he "had no reason to do otherwise." Dft. Opp. (Dkt 203) at p. 6. This is incorrect. Dr. Jusko was retained as an expert by Bayer in 2015, and disclosed his first report in 2016, but did not do *any* research regarding PTC/IH prior to reaffirming his earlier opinion. Plf. Ex. B (Dkt 135-3) Jusko 2018 Dep. at 21:9-22:14.[1] Rather, Dr. Jusko chose to ignore the entire body of literature linking androgens and PTC until three weeks

[1] Indeed, Bayer's counsel agreed early on that its experts *would not* wait until December 28, 2017 to begin their work here. *See* July 27, 2017 Transcript of Case Management Conference (Dkt 70) at 71:5-11 (JUDGE ENGELMAYER: But to Judge Cott's point, none of this is new. You've combated expert reports earlier. The thrust of the arguments are probably reasonably anticipatable. MS. COOK: Yes. JUDGE ENGELMAYER: I expect your experts can be anticipatorily drafting even as we speak. MS. COOK: Yes. And they will.)

prior to the disclosure of his report, and even then performed a cursory, outcome-determinative review solely for the purpose of this litigation.

Next, Bayer claims that Dr. Jusko analyzed the literature relied upon by Dr. Johanson simply by way of the inclusion of these sources in Dr. Jusko's lawyer-created "Materials Reviewed" list. Dft. Opp. (Dkt 203) at p. 6. Yet, although Dr. Jusko consistently cites to his "References" throughout his report, he *never* cites to these "AR" sources in his report, even when specifically criticizing Dr. Johanson's AR-mechanism. Moreover, even if Dr. Jusko *did* review these sources, Bayer's citations betray a decidedly unscientific method of rebuttal: ignoring the actual studies and their methods and cherry-picking a single line from the conclusions.

Finally, Bayer argues that whether or not Dr. Jusko actually reviewed the literature, Plaintiffs' experts "have not provided a single study examining LNG's effects on cerebrospinal fluid (CSF) production." Dft. Opp. (Dkt 203) at p. 7. Thus, as Bayer suggests, Dr. Jusko ignored *all* of the evidence provided by Plaintiffs' experts, and his proffered opinion rests instead on the incredibly simplistic notion that no study has *directly* measured the outcome opined by Plaintiffs' experts. This methodology cannot pass *Daubert* muster, even for a rebuttal expert. Furthermore, Dr. Jusko has *no* background knowledge, skill, experience, training, or education in PTC pathophysiology or CSF production and ion transport. For this reason, Dr. Jusko *must* make sweeping conclusions at the very first step to intentionally foreclose further analysis. His opinions here are superficial at best, and wholly litigation-driven. Simply put, Dr. Jusko is not qualified to rebut Plaintiffs' mechanism opinions.

## IV. Bayer's Defense of Dr. Jusko's Opinions Regarding LNG at the brain and CSF Ignores and Misrepresents the Scientific Evidence

Next, Bayer essentially admits that Dr. Jusko "ignored evidence that low hormone concentrations in CSF can cause biological activity," focusing instead on Bayer's own criticisms

of the evidence cited by Plaintiffs' experts. Dft. Opp. (Dkt 203) at p. 9. Bayer's claim that the cited study "did not attempt to correlate CSF concentrations to biological activity" misses the mark. Although Dr. Jusko cites this very source in his report as supportive of his opinions, he conveniently ignores the information relevant to Plaintiffs' opinions. Despite the low levels of steroids measured by the authors, the article concludes that "brain steroids of peripheral origin may reflect various physiological situations or even pathologies," and that even "minimal levels of neurosteroids [ ] are indispensable for CNS functions." Plf. Ex. J (Dkt 135-28) Kancheva 2011 at pp. 26-7. Bayer's pivot to a lack of ***direct*** evidence that LNG enters the CSF does nothing to compensate for Dr. Jusko's cherry-picked reliance upon the study he cite in his report.

Finally, Plaintiffs neither misstate nor misunderstand Dr. Jusko's opinions regarding inhibition of ovulation; rather, these opinions highlight Dr. Jusko's wrongful ignorance of evidence that "sufficient LNG reaches the brain" to produce various biological activities. First, Bayer highlights Dr. Jusko's acknowledgement of *direct evidence* of LNG's biological activity at the brain. Dft. Opp. (Dkt 203) at p. 9 ("Dr. Jusko has never denied that LNG can inhibit ovulation by activity at the brain.") While Dr. Jusko's "opinion on LNG and IIH," may not "depend on whether LNG inhibits ovulation," Dr. Jusko *must* ignore or reject, in forming his opinion, both the direct evidence that the LNG *from Mirena*, *specifically*, can produce biological activity at the brain *and* direct evidence that LNG *from Mirena*, *specifically*, interacts with MR and AR in the plasma to produce biological activity. Instead, Bayer again pivots to a lack of ***direct*** testing indicating that LNG interacts with MR and AR within the CSF. Dr. Jusko's rejection of the entire body of evidence supportive of Plaintiffs' opinions simply because a final, costly and unethical test has not been performed to *confirm* what that evidence *supports* is completely unscientific.

## V. Dr. Jusko is Unqualified to Offer Opinions on the Mirena Label and Bayer Fails to Even Address Plaintiffs' Challenges to His Qualifications as to Disease Mechanism

Bayer fails to even address Dr. Jusko's qualifications as they relate to the pathophysiology of PTC or CSF dynamics, and Bayer's attempts to defend Dr. Jusko's qualifications regarding the Mirena label have no merit. Indeed, Bayer's defenses of Dr. Jusko's qualifications are entirely irrelevant to the Mirena label and the labeling opinions Dr. Jusko intends to offer. Although Bayer agrees that Dr. Jusko's opinions are "appropriately limit[ed]" to pharmacology, Bayer sidesteps Dr. Jusko's lack of qualifications as to the *actual* opinion contained in his report: that "in [his] view," the Mirena "accurately and reasonably communicates the most important pharmacologic information." *See* Dft. Opp. (Dkt 203) at p. 10; *see also* Plf. Ex. A (Dkt 135-2) at p. 19. While Dr. Jusko may have *personal* opinions as to the accuracy or reasonableness of the Mirena label, he is certainly not qualified to provide *expert* opinions on the content of drug labeling or the legal requirements for that content.

Finally, Bayer points to the same citation as Plaintiffs to incorrectly insinuate that Dr. Jusko somehow reviewed the 2017 Mirena Label and determined that it was "word-for-word identical" in forming his opinions. Dft. Opp. (Dkt 203) at p. 10 (quoting Jusko Dep. at 248:8–17). Yet, Bayer fails to indicate that Dr. Jusko was responding to questioning by Bayer's counsel on direct examination, after comparing the labels for the very first time. Bayer also claims that "Dr. Jusko has fully considered Mirena's 2017 label and it does not change or undermine his opinion." Dft. Opp. (Dkt 203) at p. 10 (citing Jusko Dep. at 248:8–22). Yet, Bayer misses the most salient point: Dr. Jusko's *ex post facto* review does nothing to *qualify* him to offer his labeling opinions. Dr. Jusko lacks even basic qualifications to opine as to the adequacy of the Mirena label, and these opinions must be excluded.

## CONCLUSION

For the foregoing reasons, and those detailed in Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion to Exclude Dr. Jusko (Dkt 135) and Plaintiffs' Omnibus Brief (Dkt 174), Plaintiffs request that this Honorable Court grant their Motion (Dkt 134) and exclude the expert testimony of William Jusko, Ph.D.

Dated: March 26, 2018

Respectfully submitted,

*/s/ Lawrence L. Jones II*
Lawrence L. Jones II
Jones Ward PLC
*Co-Lead Counsel for Plaintiffs*

Martin D. Crump
Davis & Crump PC
*Co-Lead Counsel for Plaintiffs*

Maxwell S. Kennerly
Kennerly Loutey, LLC
*Liaison Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was filed via the ECF/CM system with the Clerk of the Court, which will have sent notice to all attorneys of record in this matter on March 26, 2018.

/s/ *Lawrence L. Jones II*
Lawrence L. Jones