# EXHIBIT 4

H6dWmirC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

In re MIRENA IUS
LEVONORGESTREL-RELATED PRODUCTS
LIABILITY LITIGATION (NO. II)

17 MD 2767 (PAE)
Conference

------------------------------x

New York, N.Y.
June 13, 2017
10:00 a.m.

Before:

HON. PAUL A. ENGELMAYER,

District Judge

-and-

HON. JAMES L. COTT,

Magistrate Judge

that impact where we are now and where we're headed? Maybe that's not the right time to ask the question, but since you mentioned it, I'm curious to know what your thought is about that.

MS. COOK: There are a number of cases that we believe are time barred in the sense that it was clear from medical records or testimony that the plaintiff believed that it had a duty to investigate or know or should have known the objective standard; that she believed that her IIH had to do with Mirena long before filing. So there are a number of cases out there. However, they are individual issues, and that's why we haven't proposed a trajectory that would put those front and center at the beginning.

HON. JAMES L. COTT: Thank you.

MS. COOK: Thank you.

MR. JONES: Your Honor --

HON. PAUL A. ENGELMAYER: I've gotten a summary. This is really just to educate us. I'm quite sure that there's a comeback that you have on general causation on the merits. There will be time for that; no disrespect but just because of the length of the agenda.

MR. JONES: I understand. Thank you.

HON. PAUL A. ENGELMAYER: The next topic I have here involves your views of the broad case trajectory going forward.

Plaintiffs, in looking at your Exhibit 1 to the joint

letter, it looked to me like you were prioritizing, in effect, discovery pool and bellwether cases and de-emphasizing, if you will, general causation. Particularly given the MDL panel's rationale for the transfer, explain to me, if you're still sticking with that as the way you want the case to go, what the logic is here. From an efficiency perspective whether you're right or wrong on general causation, isn't there logic to front-loading common discovery and front-loading, one way or the other, the apparently inevitable Daubert litigation on general causation efforts?

MR. JONES: Your Honor, that is an issue that Mr. Crump has been working on in negotiating with the defendants, so I'll let him respond.

HON. PAUL A. ENGELMAYER: Go ahead. Welcome.

MR. CRUMP: Your Honor, we did the traditional method of the MDL workup, and it's not necessarily that we were pushing causation, general causation to the back, but as a newcomer to this litigation and without seeing the documents that Bayer has produced, that defendants have produced in the other litigations and to Mr. Jones and Mr. Miller, I feel that a short time frame, as Bayer is pushing for, that they are, in effect --

HON. PAUL A. ENGELMAYER: Sorry. Put aside the time frame. I'm not really talking about the number of months or whatnot, but just as a matter of sequencing. I'm really

raising the "what goes first" issue here, whether we should be focusing on individual case-specific discovery -- would seem to be the theory of your proposal -- or general causation, putting aside how long it takes to get there.

MR. CRUMP: Your Honor, in our plan, which we'd certainly be flexible on the dates, we would propose that they go on a parallel track. Honestly, part of, I guess, the problem with front-loading in our opinion is that all of the other discovery is stayed and we get back to the judgment issue. There becomes issues in the bifurcated system, which I've been involved in in other MDLs, and all MDLs are different. Some call out for that type of system based on weaker scientific arguments, or whatever the case may be, but we would propose that those occur on a parallel track.

HON. PAUL A. ENGELMAYER: Let me test that with you.

MR. CRUMP: Yes.

HON. PAUL A. ENGELMAYER: You raise a concern about the stay of other discovery. I think you may be misreading me. With respect to outgoing discovery by Bayer, I'm not positing that as something to be stayed. I'm proposing that all common discovery we get done, including, but not limited to, general causation discovery. I am proposing -- again, I'm putting this out for bid, but it's useful to have a target for all of you to shoot at -- that the discovery that's keyed to individual plaintiffs, the bellwethers, if you will, or the discovery pool

cases, if you will, it's not clear to me what the value is in devoting time and resources to those case studies when there is at least, as the MDL panel anyway sees it, the potential for a common defense side resolution if they are right about general causation.

MR. CRUMP: Understood, your Honor, and I think that the value of working those individual case issues up is that they are there and ready for once that determination is made. If you're talking about, for example, a discovery pool where you establish the number of cases and move forward with the individual discovery on those cases so that they are ready once those common issues are, in fact, ruled upon.

HON. PAUL A. ENGELMAYER: Supposing that one were to find an intermediate way in which while the general causation and common discovery would be done and the Daubert was being litigated, a system was set up to make sure that the plaintiffs and the defense had identified the case studies, the plaintiffs, if you will, who would be in the common pool, but the process of actually then undertaking the depositions of the doctors and of the individual plaintiffs and whatnot, all of that was deferred until we saw whether the case had cleared the Daubert motion. That way at least we're ready to get out of the gate, if you will, on individualized discovery as soon as you prevail, if you will, in beating back the Daubert challenge, but we haven't devoted time and resources to

individualized discovery per se. What about that?

MR. CRUMP: Understood, your Honor, and I guess from our perspective, we feel that the work that we would do on those individual cases would probably pale in comparison to general workup and the workup on general causation. So in effect, having those cases worked up and ready to go -- if we take the defendants' approach, for example, then we're dealing with these other issues and then we have the general causation, the Daubert hearings and then await ruling from the Court, and at that point in time we begin that period of discovery, which sometimes can be an extended process, scheduling doctors' deposition, other things, and that like, and in respect to those, we then have the specific cases, specific causation, and then summary judgment motions.

HON. PAUL A. ENGELMAYER: What does discovery look like as it relates to the individual plaintiff? Once we get rid of or assume away the Bayer side, general causation, what does discovery look like as to any individual plaintiff?

MR. CRUMP: Well, your Honor, I think you'd have the plaintiff, potentially family members, you'd have the prescribing physician, the treating physician. From there you potentially have other fact witnesses that may be involved. And then, of course, on through the process, the designation of case-specific experts, the deposing of those particular case-specific experts, the practice of the Daubert, examination